Overton vs. Matthews et al.

CORPORA-TION:
Only a partnership until corporate articles are filed.

---

OVERTON vs. MATTHEWS et al.

1.    ALTERATION: *Promissory note avoided by.*

A material alteration of a note in its date or other parts by the payee or holder, without consent of the maker, avoids it as against the maker even in the hands of a *bona fide* holder without notice of such alteration.

Overton vs. Matthews et al.

2. SAME: *Inserting wrong date in note: Bona fide holder.*
   If the date of a note be left blank, any holder may insert the true date; but if he insert an improper date, it will avoid the note as between him and the makers, but not as between the makers and a purchaser for value before maturity without notice of the improper dating.

3. SAME: *Pleading.*
   A plea that the blank date of a promissory note was fraudulently filled by the payee with an improper date, is good against the payee, but not against his assignee for value before maturity, without averment of notice, etc.

4. INSTRUCTIONS: *To find for plaintiff or defendant.*
   An instruction that upon the evidence in the case the jury should find for the plaintiff or defendant, should not be given except in cases where there is no evidence to sustain the cause of action or defense, and the court can so say as matter of law.

5. ALTERATION: *Whether material, is for court.*
   Whether a change made in a note is a material alteration, is a question of law for the court to determine, and not of fact for the jury.

APPEAL from *Drew* Circuit Court.

Hon. T. F SORRELLS, Circuit Judge.

*Wells* and *McCain*, for appellant.

ENGLISH, C. J.   This suit was brought in the circuit court of Drew county, by Fernando C. Overton, as assignee, upon the following note, against the makers thereof:

"BLOOMFIELD, IOWA, June 18, 1877.

"$125.   Six months after date I promise to pay to the order of Great Western Well Auger Works, for value received, one hundred and twenty-five dollars, payable at bank at Pine Bluff, with interest at the rate of 10 per cent. per annum, and 10 per cent. attorney's fees if collected by suit.

"W. J. MATTHEWS,

"W. M. LARKIN,

"T. H. MATTHEWS,

"J. H. HAMMOCK.

Indorsed—"Pay the within to Fernando C. Overton.

"GREAT WESTERN WELL AUGER WORKS,

"STEPHEN RYAN, Proprietor."

The complaint set out the note, and alleged that on the first day of July, 1877. and before the maturity thereof, the Great Western Well Auger Works in their name as such, by Stephen Ryan, proprietor, indorsed said note in writing, and delivered the same to the plaintiff, etc.

The defendants filed an answer with two paragraphs, the first of which was struck out, and the second was as follows:

"And the defendants further state that they never signed or ratified the note exhibited in the plaintiff's complaint, nor did any person authorized by them; but they state that they did, in the first part of the year 1877, sign such writing, in blank as to date, and it was agreed and understood by and between the parties to the note that said note was to be dated upon the delivery of a certain auger to the defendants by the Great Western Well Auger Works, due six months after date, as stated as to interest, etc., and upon no other consideration or different consideration; and that the Great Western Well Auger Works fraudulently, and without any authority from said defendants, and without fulfilling any of the conditions whatever, did, with the design and intention of cheating and defrauding said defendants, fill up said blank, thereby altering and making void said note. Wherefore the defendants pray judgment," etc.

To this answer the plaintiff demurred, and the court overruled the demurrer.

The case was submitted to a jury, and the parties introduced the following evidence, in substance:

Plaintiff read in evidence the note sued on, and rested.

Thomas H. Matthews, one of the defendants, testified that the note in suit was sent to the Great Western Well Auger company, signed by all the defendants, but with

the date left blank, which date was to be filled up when said company should deliver to defendants a well auger, which the note was to pay for, but the auger was never delivered. The company do business at Bloomfield, Iowa.

The company, after the note was sent to them, acknowledged its receipt by the following letter:

"OFFICE OF GREAT WESTERN WELL AUGER WORKS,
BLOOMFIELD, IOWA, July 13, 1877.

"W. J. Mathews, Esq., Monticello, Ark:

"DEAR SIR—Your favor of July 3 to hand and contents noted, and would say, in reply, that your papers are satisfactory, and we will forward your auger, etc., in a very few days. In consequence of the heavy rains in this country of last month, which damaged the railroads and made it impossible for us to get material to work on, we have fallen some behind with our work, but your note will be void until the auger is received by you. We are now running a large force, and gaining on our lost time very fast.

"Yours, etc., GT. W. W. A. W.
"B."

Plaintiff objected to the introduction of this letter, but the court overruled the objection, and permitted it to be read to the jury.

Witness supposed Smith was the corresponding secretary of the company, as he signed all the letters. Here witness exhibited several letters from the Well Auger company, signed "per Smith."

John H. Hammock, another of the defendants, testified, substantially, the same as witness, Matthews, and defendants rested.

The deposition of plaintiff, Overton, taken the thirtieth

of April, 1878, was read in evidence, and he deposed, in substance:

That he was thirty-three years of age, and resided in Bloomfield, Iowa. That he was the owner of the note in suit, and bought it from William S. Smith, July 24, 1877, and paid him for the note $120. That he knew nothing of the consideration for which the note was executed by its makers, only that William S. Smith, who had been an employee of the Great Western Well Auger Works represented the note to be perfectly good.

In the negotiation of Smith to sell witness the note, he showed him a letter purporting to be from Hon. W. F. Slemons, M. C. of the Second district of Arkansas (which is attached to his deposition) on which he relied almost entirely as to the genuineness of the note and the responsibility of its makers.

That the note was dated, when he first saw it, "June 18, 1877," and he had no knowledge whatever that said date was not placed there at the execution of the note, nor that it was put there by any one but the proper person having a right to date the same.

That on the fifteenth of December, 1877, he notified the makers of the note, and had sent it to Truelock Brothers, bankers at Pine Bluff, for collection, to which notice he received, by postal card, the following reply, (attached to deposition):

"MONTICELLO, ARK., Dec. 24, 1877.

"SIR—Yours fifteenth inst. to hand. In reply will say, the note is void. The auger has never been shipped. The company is a fraud—a set of swindlers. I will give them a free notice in the next 'Monticellonian,' our county paper; and if they do not return the note, I will advertise them in the 'State Gazette.' Yours, truly,     T. H. MATTHEWS.

"F. C. Overton, Esq., Bloomfield, Iowa."

Plaintiff further deposed that when he took said note, on July 24, 1877, he did not know that there was any defense to it, or any grounds of defense.

On cross-examination, he deposed that there was such a company as the Great Western Well Auger Works, located in Bloomfield, Iowa, and that its business was the making and selling well augers, and selling territory, and he had no personal knowledge of its responsibility. He had known said company in a general way for two years or more, but had no knowledge of its responsibility. He was in no manner connected with it. At the time he traded for the note, he did not know any thing about its consideration. He had learned from defendants, since the note was sent for collection, that the consideration for its execution had not been complied with, and from said company that they offered to, and were ready to ship the property, but that defendants had refused to receive the same.

The letter of Hon. W. F. Slemons, attached to plaintiff's deposition, follows:

"MONTICELLO, ARK., July 3, 1877.

"SIR—Mr. W. J. Matthews has asked me to write to you, in answer to your postal card inquiring after the responsibility of him and securities. I am glad to state that Mr. Matthews and brother, and Mr. Hammock, are entirely responsible for the amount mentioned. Mr. Matthews is a farmer, Mr. Hammock sheriff of the county, the other Matthews a merchant.

"Respectfully,          W. F. SLEMONS,
"Second District Arkansas M. C."

Plaintiff also read in evidence the deposition of William S. Smith, who deposed, in substance, that he was thirty years of age, and resided at Bloomfield, Iowa. That he

sold the note in suit to plaintiff, July 24, 1877, for $120. That he had been for more than a year an employee of the Great Western Well Auger company, and received the note from the company on salary due to him from them. That before he took the note, he had in his possession the above letter from Hon. W. F. Slemons, recommending the makers of the note to be solvent, and transferred the letter to plaintiff with the note. That he had no knowledge as to the date of the note, except what the note showed on its face, and it did appear dated "June 18, 1877," when he received it from the company.

That while he was employee of the company, if a note was sent by its makers without being dated, or defectively drawn, it was under all circumstances returned to the makers for the proper correction.

That he did not know of the non-fulfillment of the contract for which the note was given, or of its consideration having failed, or whether the contract was completed or not, or anything against the validity of the note when he got it.

On cross-examination, he further deposed that there was such a company as the Great Western Well Auger Works; that its place of business was Bloomfield, Iowa, and it manufactured and sold well augers and territory, and he did not know of its present responsibility. He supposed plaintiff had some general knowledge of the company, but did not know what he knew of its financial condition and responsibility. Did not know that plaintiff had any knowledge, at the time he sold him the note, of the consideration for which it was executed, or of the condition on which it was given, nor did witness know whether the conditions had been complied with.

The above being the substance of all the evidence intro-

Overton vs. Matthews et al.

duced at the trial, plaintiff moved the following instructions:

"1. If the jury believe from the evidence that defendants executed the note sued on in blank as to date, and delivered the same to the Great Western Well Auger company, and the date was afterwards filled, and before the note become due and payable, the plaintiff, Overton, purchased the note for value, without notice of any defense to the note, he is entitled to recover.

"2. If the jury believe all the evidence in the case, they should find for plaintiff.

"3. Under the testimony in the case, the jury must find for plaintiff.

"4. The mere filling up of a date to a note, given without date, when it does not give a date anterior to that of the delivery of the note, is not a material alteration."

The court gave the fourth, but refused to give the first, second and third of these instructions, and plaintiff excepted.

For defendants, and against the objection of plaintiff, the court gave the following instruction:

" If the jury believe from the evidence that there was a material alteration of the note sued on after its execution, affecting the rights of defendants, and without their consent, they will find for defendants."

The jury returned a verdict in favor of defendants, upon which judgment was entered.

Plaintiff moved for a new trial on the grounds:

That the court erred in refusing the first, second and third instructions moved for plaintiff; and in giving the instruction asked for defendants; and in permitting defendants to read in evidence their letter from the Great Western Well Auger Works to them.

The court overruled the motion, and plaintiff took a bill of exceptions and appealed.

The note sued on appears on its face to be negotiable paper, and is subject to the rules of the law merchants. *Gantt's Dig., sec. 566; 1 Daniel on Negotiable Instruments, secs. 61–62.*

1. ALTERA-TION: Promissory note avoided by. A material alteration of a note in its date or other parts, by the payee or holder, without the consent of the makers, avoids it as against the makers, even in the hands of a *bona fide* holder without notice of such alteration. *2 Daniel on Negotiable Instruments, secs. 1373, 1376; Lemay v. Williams, 32 Ark., 166; Inglish et al. v. Breneman. 5 Ark., 377.*

2. ———: Inserting wrong date *Bona fide* holder. If the date be left in blank, any holder has the right to insert the true date (*Inglish et al. v. Breneman, sup.*), and should he insert an improper date, though it will avoid the note as between him and the makers, yet, by the law merchant, one who takes the note for value before maturity, without notice of such improper filling of the blank date, may recover upon it against the maker. *1 Daniel on Negotiable Instruments, secs. 142–143, 843.*

It seems from the evidence in this case that the makers of the note intrusted it to the payees (the Well Auger company), with authority to fill the blank date on delivery of the auger for which it was given, and that they in bad faith filled in the date, and transferred the note without delivering the auger, but that appellant purchased the note for value, before its maturity, it being fair on its face, without any notice of such wrongful filling of the blank date. Appellees, by confiding in the auger company, put it in their power to fill the blank date wrongfully, and impose the note on strangers, and they must suffer for the wrongful act of the company, in whom they reposed confidence, and intrusted with such authority, rather than appellant,

Overton vs. Matthews et al.

who was a stranger to the transaction, and a *bona fide* assignee of the note.

If the well auger company had sued on the note, the plea of appellees would have been good, but it was bad as to appellant, for want of averment of notice, etc.

*3. ———:
Pleading:
Notice.*

The court should have given the first instruction moved for appellant.

In the second and third instructions moved for appellant, the court was, in effect, asked to charge the jury that appellant was entitled to a verdict upon the evidence. Such instructions should not be given, except in cases where there is no evidence to sustain the cause of action, or defense, and the court can so say as matter of law, it being the province of the jury to judge of the facts, and of the court to declare the law. *Constitution, art. 7, sec. 23.*

*4. INSTRUCTIONS:
To find for plaintiff or defendant.*

The court should not have given the instruction moved for appellee. Where a change has been made in a note, it is a question of law for the court, and not of fact for the jury, to determine whether or not it amounts to a material alteration. Whether or not the appellant took the note for value, before maturity, and without notice of the wrongful filling of the blank for the date, were questions for the jury. *2 Daniel on Negotiable Instruments, sec. 1401.*

*5. ALTERATION:
Whether material is for the court.*

The letter from the auger company to appellees tended to prove the agreement between the makers and payees of the note, but in no way affected the rights of appellant as a *bona fide* holder of the note.

The court erred in overruling the demurrer to the answer of appellees, and also in refusing appellant a new trial.

Reversed and remanded for further proceedings.