**KKK MEDICINE CO. v. HARRINGTON et al.**

No. 10116—Opinion Filed Oct. 18, 1921.

(Syllabus.)

**1. Appeal and Error—Discretion of Trial Court—Grant of New Trial.**

The judge who presides at the trial of a case, hears the testimony as it falls from the lips of the witnesses, observes their demeanor on the stand, and has full knowledge of all the proceedings had and done during the progress of the trial, is in a better position to know whether or not substantial justice has been done than any other person can be. Where such judge on presentation of a motion for a new trial sustains such motion, it will require a clear showing of manifest error and abuse of discretion before an appellate court would be justified in reversing such ruling of the trial court.

**2. Same—Presumption of Justice of Ruling.**

A motion for a new trial is addressed to the sound, legal discretion of the trial court, and where the trial judge who presided at the trial of the case sustains such motion, every presumption will be indulged that such ruling is correct.

**3. Guaranty—Exoneration of Guarantor—Change in Obligation of Principal.**

Where the creditor changes or alters the original obligation of the principal without

the consent of the guarantor, such act on the part of the creditor exonerates the guarantor.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by KKK Medicine Company against C. W. Harrington, as principal, J. Krouch, F. S. Douglas, and A. C. Neel, as guarantors, to recover on account against C. W. Harrington. Judgment for the plaintiff against F. S. Douglas. Motion for new trial sustained. Plaintiff appeals. Affirmed.

Swan C. Burnette, for plaintiff in error.

Wyatt & Waldrep, for defendant in error.

MILLER, J. This action was commenced in the superior court of Pottawatomie county by the KKK Medicine Company, as plaintiff, against C. W. Harrington, F. S. Douglas, J Krouch, and A. C. Neel, defendants, to recover on an account due from C. W. Harrington to the plaintiff for goods purchased of the plaintiff under a certain contract, the other defendants being charged as guarantors for the faithful performance of the contract. The case was tried to the jury, which resulted in a verdict in favor of the plaintiff and against defendant, F. S. Douglas, his coguarantors being exonerated by the verdict of the jury. F. S. Douglas filed a motion for a new trial. which was by the court sustained. The plaintiff excepted and appeals to this court to reverse the decision of the lower court granting a new trial. The parties will be referred to as they appeared in the lower court.

The facts disclosed by the pleadings and evidence are that C. W. Harrington made a contract with the plaintiff by which he was to purchase medicine of it at wholesale prices and sell same in a specified territory to be selected by him. He selected as this territory Lincoln county, Oklahoma, which was specified on the contract. After the contract was signed by Harrington, he procured the signatures of his codefendants as guarantors for the faithful performance of the contract. The terms of the guaranty were set forth in a separate clause or agreement attached to the contract.

The contract was executed on the 28th day of August, 1911. It provided that it should not be in force and effect until approved by the company, by its president at its office at Keokuk, Iowa. It was approved on the 13th day of September, 1911, by the KKK Medicine Company, by George Hassall, its president at Keokuk, Iowa.

On the 20th day of September, 1911, C. W Harrington wrote a letter to the plaintiff company stating that he wanted his territory changed to Seminole county instead of Lincoln county. Pursuant to this request, and on the 22nd day of September, 1911, George Hassall, as president of the plaintiff company, struck out the word "Lincoln" and inserted the word "Seminole" on the said contract. He thereupon sent a letter by registered mail to each of the guarantors on the contract, advising them he had made this change. He afterwards received the registry return cards, showing the delivery of the three registered letters. Some of the defendants said their name was signed to the registry return card by some one else, and that they did not receive the letters; but defendant Douglas admitted his signature on the registry return card, but said he had no recollection about the letter.

The plaintiff in its petition alleged that it made the change in the contract striking out the word "Lincoln" and inserting the word "Seminole" as above stated, but further averred that this was not a material change in the contract, and that the guarantors consented to it, because they did not object upon being notified by registered mail as above stated.

But one assignment of error is made in the petition in error, which is as follows:

"That said court erred in sustaining the motion of defendant in error, F. S. Douglas, for a new trial."

A motion for a new trial is addressed to the sound discretion of the trial court. It has been repeatedly held by the courts that the judge who presided at the trial of the case. observed the witnesses upon the stand and had full knowledge of all proceedings had and done in court during the progress of the trial. was in better position to pass upon a motion for a new trial than any other person could possibly be; that where the judge who had tried the case granted a new trial, there would have to be a clear showing of an abuse of discretion before it would be disturbed by the appellate court

In the case of Missouri, K. & T. Ry. Co. v James, 61 Okla. 1. 159 Pac. 1109, this court said:

"Trial courts are vested with a very large and extended discretion in the granting of new trials, and new trials ought to be granted whenever, in the opinion of the trial court, the party asking for a new trial has not probably had a reasonably fair trial, and has not, in all probability, obtained or received substantial justice, although it might be difficult, in many instances, for the trial court or the parties to state the grounds for such new trial upon paper so plainly that the Supreme Court could understand them as well as the trial court and the parties them-

selves understood them." Crouch v. Crouch, 59 Okla. 181, 158 Pac. 573; St. Paul Fire & Marine Insurance Co. v. Peck, 59 Okla. 195, 158 Pac. 595; Vickers v. Philip Carey Co., 49 Okla. 231, 151 Pac. 1023; section 12, page 226, 20 R. C. L.

We do not think the court committed error in granting the new trial. It is well settled that contracts of guaranty may not be altered so as to change the liability of the guarantors. Section 1043 of Revised Laws of 1910, provides:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

In Hughes v. Board of Com'rs of Oklahoma County, 50 Okla. 410, 150 Pac. 1029, the opinion states:

"It is contended that the passage of the fee and salary act increased the obligation of the bond, thus altering the contract, without the consent of the surety company, and that this discharged it from liability. On this point we find a very learned and exhaustive discussion in the case of People v. Vilas, 36 N. Y. 459, 93 Am. Dec. 520, from which we quote the following:

"'As between private parties, the law is that any alteration in the obligation or contract in respect of which a person has become surety without the consent of the latter extinguishes his obligation and discharges him (Burge on Surety, 214; Theobald on Principal and Surety, section 132; Witcher v. Hall, 5 Barn & C. 269); and this result follows irrespective of the inquiry whether the alteration could work any injury to the surety or not (Bangs v. Strong, 4 N.Y. 315). The reason upon which this rule is founded is that the surety has never made the contract upon which it is sought to charge him. His answer is. if it is sought to charge him upon the altered contract. that he never made any such bargain; and if upon the original contract, that such contract no longer exists, having been legally terminated by the altered or substituted contract made by the parties. In either contingency the answer furnishes a complete defense.'"

In Commonwealth Nat. Bank of Dallas, Tex., v. Baughman, 27 Okla. 175, 111 Pac. 332, Mr. Justice Hayes, speaking for the court, says:

"A material alteration of a note by the payee or holder without the consent of the maker avoids it against the maker, even in the hands of a bona fide holder, without notice of such alteration. Overton v. Matthews et al., 35 Ark. 146, 37 Am. Rep. 9; Horn v. Newton City Bank. 32 Kan. 518, 4 Pac. 1022:

2 Daniel on Negotiable Instruments, pars. 1373, 1376. Whether an alteration is material does not depend upon whether it increases or reduces the maker's liability. The test is whether the instrument, after the alteration, expresses the same contract; whether it will have the same operation and effect after the alteration as before. If the change enlarges or lessens the liability, it is material, and vitiates the contract. 3 Am. & Eng. Encyc. of Law & Prac. p. 401. New York Life Insurance Company v. Martindale, 75 Kan. 142, 88 Pac. 559, 21 L. R. A. (N. S.) 1045, 121 Am. St. Rep. 362, 12 Am. & Eng. Ann. Cas. 677, is in point. In that case the note sued upon, when executed, contained a clause providing for interest at blank rate per annum from maturity. Subsequent to its execution words were inserted so as to make the note bear interest at the rate of 5 per cent. per annum from maturity. Under the statute, in the absence of any provision in the note relative to interest, it would have drawn, after maturity, interest at the rate of 6 per cent. per annum. By the added words, the contract was made to draw a lower rate of interest after maturity than it would have drawn under that statute. It was held that the alteration vitiated the note. See, also. Moore v. Hutchinson et al., 69 Mo. 429; Whitmer v. Frye, 10 Mo. 348; 2 Daniel on Negotiable Instruments, par. 1835."

In Farmers & Merchants' Bank v. Scoggins, 41 Okla. 719, 139 Pac. 959, it is held:

"A promissory note executed January 2. 1909. containing the following clause: 'And in case of legal proceedings on this note I agree to pay 10 per cent. additional as attorney's fees'—was nonnegotiable, and if after the execution of the note, and without the consent of the maker, such clause is eliminated by running a pen through the same. such elimination made the note negotiable, and such change was a material alteration which rendered the note void as against the maker, even in the hands of a bona fide holder for value."

It is urged by plaintiff in error that under the contract C. W. Harrington had a right to select his territory and by this letter he selected Seminole county instead of Lincoln county. C. W. Harrington had already selected his territory before the contract of guaranty was signed by the guarantors. This selection was a part of the contract. If he had not yet selected his territory before the contract of guaranty was signed, then we might indulge the presumption that the guarantors were willing for him to select whatever territory he wanted. But having selected his territory and specified his selection in the contract, a change of the territory was necessarily a change in the terms of the contract. The plaintiff in error recognized this to be a change in the contract

to such an extent that it was necessary to send notice to the guarantors that it had changed the contract, but plaintiff in error says because the guarantors did not object they consented to the change.

Section 988 of the Revised Laws of 1910 reads:

"A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise."

The contract of guaranty was in writing, and under the statute it could only be altered by a contract in writing or an executed oral agreement. When the plaintiff altered the original obligation of the principal and sent a registered letter to the defendant, notifying him that it had altered the principal contract, and the defendant ignored the letter, his silence did not constitute a contract in writing.

Under the facts stated in plaintiff's petition and the provisions of the statute above quoted, the trial court did not commit error in sustaining the motion for a new trial.

The judgment of the trial court granting a new trial is therefore affirmed.

HARRISON, C. J., and KANE, JOHNSON, ELTING, and KENNAMER, JJ., concur.