## ISAACS v. TULL et al.

No. 18624. Opinion Filed May 1, 1928.

Rehearing Denied June 19, 1928.

(Syllabus.)

**1. Appeal and Error—Discretion of Trial Court—Grant of New Trial.**

"The judge who presides at the trial of a case, hears the testimony as it falls from the lips of the witnesses, observes their demeanor on the stand, and has full knowledge of all the proceedings had and done during the progress of the trial, is in a better position to know whether or not substantial justice has been done than any other person can be. Where such judge on presentation of a motion for a new trial sustains such motion, it will require a clear showing of manifest error and abuse of discretion before an appellate court would be justified in reversing such ruling of the trial court."

**2. Same—Presumption in Favor of Ruling.**

"A motion for new trial is addressed to the sound, legal discretion of the trial court, and where the trial judge who presided at the trial of the case sustains such motion, every presumption will be indulged that such ruling is correct."

**3. Negligence—Last Clear Chance Doctrine.**

"The last clear chance doctrine recognizes primary negligence of plaintiff, but that such negligence has ceased, after which his condition of peril has been discovered by defendant, and, notwithstanding the prior negligence of plaintiff, the defendant might, by the exercise of ordinary care, have refrained from inflicting any injury on plaintiff."

Error from District Court, Oklahoma County; Sam Hooker, Judge.

Action by James Isaacs against Francis M. Tull and Clara M. Tull. Verdict for plaintiff, and from action of the court in granting new trial, plaintiff brings error. Affirmed.

Snyder, Owen & Lybrand and Breck Moss, for plaintiff in error.

Forrest L. Hughes, M. S. Singleton, and Everest, Vaught & Brewer, for defendants in error.

LESTER, J. The parties to this appeal occupy the same position here as in the district court, and will be referred to as they appeared there.

Suit was brought by the plaintiff against the defendants, Francis M. Tull and Clara M. Tull, for the sum of $10,000 for damages on account of personal injuries to the plaintiff, and the sum of $1,000 for medical and other expenses incurred by reason of said injuries.

Trial was had to the court and jury, and the jury returned its verdict in favor of the plaintiff in the sum of $10,000.

Motion for new trial was filed by defendants, and thereafter heard by the court, and on the 12th day of February, 1927, the court sustained said motion, and as a part of its journal entry included therein the following statement:

"The court having had under advisement the motion of the defendants for new trial in the above-entitled cause for a long period and having reached the conclusion that said court had erred in submitting to the jury the doctrine of the last clear chance, and that the verdict of the jury is against the judgment of the court and verdict disapproved by the court, finds that said motion for new trial should be sustained."

From the action of the court in granting a new trial, the plaintiff prosecutes this appeal.

The plaintiff contends that the action of the court in setting aside the verdict of the jury and granting a new trial was arbitrary and constituted an abuse of its discretion. The plaintiff further contends that under the evidence submitted to the court and jury the plaintiff was entitled to an instruction on the doctrine of the last clear chance.

The plaintiff in his brief presents a resume of the evidence of the witnesses who testified at the trial; however, we were not content with resting our judgment upon the evidence therein shown, and we have carefully read the entire testimony of all the witnesses as shown from the record.

It appears that on the afternoon of April 20, 1924, the plaintiff, together with four others, was riding in a Hudson roadster, driven by one Robert Harding on a dirt road which makes a junction with the hard-surfaced paved road running southwesterly from Oklahoma City, commonly called the Newcastle road, at a point approximately three miles south of Oklahoma City.

The defendants were traveling in a southwesterly direction on the said paved road.

The car in which the plaintiff was riding was traveling north on the dirt road, and, when the last-named car reached the junction of the two roads the driver of the latter car turned the car in a northeasterly direction, and thereafter, within a distance of about eight feet, the left side of the rear end of the latter car struck the left front side of the defendants' car and the plaintiff, who was riding with his legs on the outside of the car in which he was traveling, was thereupon injured.

For convenience, the car in which the plaintiff was riding at the time he was injured will be called the Harding car, and the car in which the defendants were driving will be called the Tull car.

The testimony of the witnesses who were riding in the Harding car placed the speed of that car from 30 to 35 miles per hour prior to its entrance onto the intersection. These witnesses also estimated its speed was from 12 to 20 miles per hour after its entrance into the intersection, except that the plaintiff (C.-M. 120) states, "We were hardly moving when they hit us."

The defendants Tull, and Mr. and Mrs. J. W. Greenway, who were traveling in the Tull car, testified that the Tull car was traveling at about the rate of 25 miles per hour until it approached within a reasonable distance of the intersection, at which time these witnesses estimated that the car slowed down to a speed of from four to ten miles per hour. Thus it can be seen that the two groups of witnesses who were in the two separate cars testified to facts which, if true, would afford but little possibility of serious accident that could happen to either car by reason of a collision. However, a, number of witnesses who were riding in the Harding car testified that the Tull car was traveling at an excessive rate of speed, and the occupants of the Tull car were even more positive in their testimony that the Harding car was traveling at a very excessive rate of speed, and that when the latter car was turned into the intersection the force of its speed was such that it caused the car to skid and strike the left front end of the Tull car.

No witness testified that the driver of the Harding car or any occupant therein gave any sign or signal as to the direction they intended to travel after coming into the intersection.

The following is in part the testimony of Harding, who was driving the car in which the plaintiff was riding at the time of his injury (C.-M. 86):

"Q. How far were you from the intersection of the dirt road with the pavement when you first observed the car that afterwards turned out to be the Tull car? A. You mean intersecting of the street? Q. How far were you from that cross-road when you first observed the Tull car coming from the east? A. I was just coming upon the crossing. Q. Then you hadn't seen the Tull car until you reached the crossing? A. No. Q. And that is the first time you saw it? A. Yes. Q. When you reached the intersection and first observed the Tull car, where was it at that time? A. It was upon the street, on the pavement. Q. Coming west? A. Going southwest."

W. V. Ellington testified upon the part of the defendants. He stated that the Harding car was traveling exceedingly fast, and that after its entrance into the intersection of said road it "continued right on to the pavement." This witness also stated that the Tull car had the appearance of traveling at a moderate rate of speed just prior to the accident. He also stated that at the time the Tull car was struck it seemed to be on the right hand of the pavement or on the north side.

F. D. Fozer, who was traveling towards Oklahoma City, stated that he saw the accident and that he was within 50 feet of the intersection at the time it occurred; that the Harding car was making at least 50 miles per hour and the car seemed to slacken just about the time it hit the pavement. This witness stated that at the time of the accident the Tull car was a little north of the center of the paved roadway.

E. M. Terry, a photographer, testified that on the 21st day of April, 1924, following the date of the accident, he visited the place where the said accident occurred and took a photograph of the skid marks claimed to have been made by the Harding car when it turned into the intersection. This photograph was identified by the photographer and introduced in evidence. Said photograph shows certain skid marks beginning at the south edge of the paved road at a point where the dirt road intersects with the same, and said skid marks continued in a northeasterly direction beyond the center of the paved road.

M. S. Singleton, an attorney at law, visited the place where the accident occurred on the date following the accident. He testified, in part, as follows:

"Q. Where were the skid marks? A. The skid marks were still visible in the dirt extending back five or six feet from the edge of the hard road, back in the dirt towards the south, and then they went on,

made a curve to the right and went on across the middle of the pavement and then on to the point of collision. Q. Did that skid mark extend north of the center of the street? A. Yes, sir. Q. How far? A. Well, it was about, I should say four or five feet. We measured it. I have the exact measurement there."

The court in its journal entry recited, "The verdict of the jury is against the judgment of the court and verdict disapproved by the court."

As hereinbefore stated, the evidence upon the part of the two groups of witnesses that were traveling in the Harding and Tull cars were irreconcilable. They disagreed upon all the material facts.

There were a number of witnesses, other than the occupants of the two cars, whose testimony indicated that at the time of the accident the Harding car was traveling at an excessive rate of speed and the Tull car was traveling at a moderate rate of speed. These witnesses also state that the Tull car was to the north of the center of the road at the time of the collision.

The skid marks shown by the photograph indicate that they were primarily caused by the force of a high speed which the Harding car was traveling at the time it made the turn in a northeasterly direction at the intersection.

As hereinbefore shown, Harding, the driver of the Harding car, testified that he had not observed the presence of the Tull car until he reached the intersection; he then turned his car in a northeasterly direction towards the Tull car, and thereafter within about eight feet struck the Tull car. However, other occupants of the Harding car testified that long before the Harding car reached the intersection they observed the Tull car traveling in a southwesterly direction on the paved road.

As we view the evidence, we are not impressed with the argument of the plaintiff that the trial judge abused his discretion in granting a new trial, but, on the other hand, in light of the physical facts and the testimony of disinterested witnesses, it is our judgment that the action of the trial court was responsive to the principles of right and in the furtherance of justice.

Under our system of jurisprudence, the trial judge occupies a distinctive position, for only to him is given the authority and latitude of setting aside the verdict of the jury where such verdict is a miscarriage of right and justice, although there appears some competent evidence which ordinarily would reasonably support such verdict.

Upon motion to set aside the verdict of the jury and grant a new trial, the trial judge must make answer to his sound judicial judgment as to whether the verdict of the jury is fairly responsive to right and justice. If he is clearly convinced that the verdict is one of great injustice, he should set it aside and grant a new trial. Of course, the trial judge should not arbitrarily and capriciously set aside the verdict of the jury. He should calmly and deliberately weigh such motion in the light of the evidence and circumstances in the case.

The authority and power given to the trial judge imposes upon him a position of great trust and confidence, and in the administration thereof he should wisely and cautiously use the power given him and with only one end in view, that of administering right and promoting justice, which, after all, is the ultimate aim of the law.

In a recent opinion by this court in the case of Hall v. Polson, decided January 31, 1928, 130 Okla. 136, 265 Pac. 1068, Mr. Justice Riley, speaking for the court, said:

"As we view it, the trend of the decisions of this court has been too broad as applied to motions for new trial in law actions where a jury passes upon disputed facts and where there is a conflict in the evidence; moreover, when such a motion is sustained, we think it far better practice on the part of trial courts to state in the record the ground upon which the court sustains or overrules such a motion.

"However, we do not feel justified in reversing the decision of the trial court in granting the motion for new trial, by reason of the fact that every presumption is indulged in support of the judgment rendered, and consequently we must indulge the presumption that for some reason the verdict shocked the conscience of the court. A reversal would have the effect of arbitrarily forcing the approval by the trial court of the verdict rendered.          \

"Mr. Justice Dunn in Hogan v. Bailey, 27 Okla. 17, 110 Pac. 890, said that the trial court has a higher function under our jurisprudence than to act merely as a moderator or umpire between contending adversaries before a jury, and that duty compels the trial court to see to it that the verdict is responsive to the demands of justice.

"Mr. Justice Burwell said the approval of the verdict means the assent and approval of mind after due consideration, and that when assent of mind could not be had, then the verdict is not supported by the evidence so as to merit its approval; that when reason and judgment rebel

against the conclusion reached, the court cannot be said to approve a verdict. Yarnell v. Kilgore, 15 Okla. 591, 82 Pac. 990.

"Mr. Justice Valentine, of the Kansas court, said courts are vested with a very large and extended discretion in granting new trials, and new trials ought to be granted whenever in the opinion of the trial court the party asking for the new trial has not in all probability had a reasonably fair trial, has not in all probability obtained substantial justice, although it might be difficult for the trial court to state the ground. Sedan v. Church, 29 Kan. 190.

"Mr. Justice Brewer, of Kansas, said: 'But when his judgment tells him that it is wrong, that whether from mistake or prejudice or other cause the jury has erred and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict and remanding the question to another jury'."

In the case of K K K Medicine Co. v. Harrington, 83 Okla. 201, 201 Pac. 496, this court in its first and second paragraphs of the syllabus thereof, said:

"1. The judge who presides at the trial of a case hears the testimony as it falls from the lips of the witnesses, observes their demeanor on the stand, and has full knowledge of all of the proceedings had and done during the progress of the trial, is in a better position to know whether or not substantial justice has been done than any other person can be. Where such judge on presentation of a motion for a new trial sustains such motion, it will require a clear showing of manifest error and abuse of discretion before an appellate court would be justified in reversing such ruling of the trial court.

"2. A motion for a new trial is addressed to the sound, legal discretion of the trial court, and where the trial judge who presided at the trial of the case sustains such motion, every presumption will be indulged that such ruling is correct."

The plaintiff also contends that the trial court erroneously concluded that it had committed error in embracing in its instruction No. 12 the following clause:

"Unless you find from the evidence that the defendants discovered the perilous position of the plaintiff in time to have avoided the injury and failed to use ordinary care to prevent the same and that by reason thereof said injury occurred, and if you so find by a preponderance of the evidence you must find for the plaintiff, but if the defendants did not discover the perilous position of plaintiff in time to prevent the accident. the law of the last clear chance does not apply here."

It will be observed that the said instruction embraces the doctrine of last clear chance. The plaintiff does not cite a single authority to support his position, As we view the doctrine of last clear chance invoked in this case, consideration must be given to the circumstances as they appeared to the defendants at the time, not as they are now known. In the difficult circumstances forced upon the defendants by Harding. the driver of the car in which the plaintiff was riding, who without sign or signal, entered into the intersection and rapidly turned his car towards the defendants, and being within a few feet of them at the time he turned his car towards them, such situation did not allow the defendants time nor opportunity to change their position so as to prevent their car from being struck by the Harding car. The defendants could not anticipate the direction the Harding car would take after it reached the intersection, neither could they suspect that the driver of the Harding car, when he came into the intersection, would fail to slow down, or that he would attempt to make a turn at the intersection while traveling at a high rate of speed such as would force his car, in making the turn, beyond the center of the paved road and against that of the defendants.

In the fifth paragraph of the syllabus in the case of Missouri, O. & G. Ry. Co. v. Lee, 73 Okla. 165, 175 Pac. 367, it is said:

"The last clear chance doctrine recognizes primary negligence of plaintiff, but that such negligence has ceased, after which his condition of peril has been discovered by defendant. and. notwithstanding the prior negligence of plaintiff, the defendant might, by the exercise of ordinary care, have refrained from inflicting any injury on plaintiff."

There was no evidence in the case which would justify an instruction on the theory of the last clear chance.

The action of the trial court in setting aside the verdict of the jury and granting a new trial is affirmed.

HARRISON, HUNT, CLARK. and RILEY, JJ., concur.

MASON, V. C. J., concurs in the conclusion.

Note.—See under (1) 4 C. J. p. 830, §2813; 20 R. C. L. p. 227; 3 R. C. L. Supp. p. 1046: 4 R. C. L. Supp. p. 1347; 5 R. C. L. Supp. p. 1091: 6 R. C. L. Supp. p. 1199. (2) 4 C. J. p. 782, §2733. (3) 29 Cyc. p. 530; 20 R. C. L. p. 141; 3 R. C. L. Supp. p. 1038; 4 R. C. L. Supp. p. 1339; 5 R. C. L. Supp. p. 1082.