## AMERICAN NAT. BANK OF ARDMORE v. DUNN et al.

No. 18932.  Opinion Filed July 2, 1929.

Rehearing Denied May 6, 1930.

Dolman & Dyer, J. G. Ralls, and Bleakmore & Barry, for plaintiff in error.

George Trice and Denver Davison, for defendants in error.

TEEHEE, C.  The American National Bank of Ardmore brought suit against Wm. M. Dunn and 22 others to recover on certain promissory notes, in which Dunn was treated as the principal promissor, and for the foreclosure of a real estate mortgage given by him in security thereof.  The litigation here is between the parties named, who will hereinafter be referred to as plaintiff and defendant, respectively, the other defendants being referred to by name where clarity of the cause so requires.

Plaintiff's petition was in the usual form in such cases and declared on six notes aggregating, less credits, $26,597.70.  Defendant, admitting execution and delivery of the instruments sued on, generally denied plaintiff's allegations, and further pleaded matter constituting defendant an accommodation maker of the notes and mortgage, failure of consideration, estoppel of plaintiff to assert liability against defendant, and other matter which, in substance, constituted fraud practiced by plaintiff upon defendant, by reason whereof he, by cross-action, alleged damages in the sum of $35,000.  One of the defendants, Oklahoma Coal Company, filed a disclaimer, and all the others answered by general denial.  Plaintiff, by reply, denied all new matter set up in defendant's answer and cross-action, and further pleaded matter of acquiescence and ratification of the transactions between plaintiff and defendant, by reason whereof defendant was estopped to deny liability.

The cause proceeded to a trial before a jury.  At the conclusion of defendant's evidence, plaintiff by demurrer challenged its sufficiency to constitute a defense, which demurrer was by the court sustained, followed by an instructed verdict against defendant, whereon judgment for plaintiff was rendered and a sale of the property ordered in foreclosure of the mortgage.

In due time defendant filed his motion for a new trial based on the grounds that the court erred in the admission of certain incompetent evidence, refusal of certain proper and legal evidence offered by defendant, sustention of the demurrer to defendant's evidence, direction of a verdict for plaintiff, and of the insufficiency of the evidence to support the verdict, and that the verdict is contrary to law.  Upon hearing, the court sustained the motion, and thereupon awarded defendant a new trial, on which action of the court plaintiff predicates error.  Thus is presented the single proposition as stated by plaintiff, to wit:

"That the court erred as a matter of law in sustaining said motion."

While recognizing the wide latitude of discretion vested in the trial court in its action on a motion for a new trial, plaintiff proceeds on the theory that such discretion is controlled by well-established legal principles, disregard whereof will constitute abuse in the exercise of the power.  The rule relied on has often been applied in many cases by this court, and is best expressed in Poynter v. Beacon Falls Rubber Co., 115 Okla. 245, 242 Pac. 563, and other cases of similar import, to wit:

"The granting of a new trial is largely within the reasonable judicial discretion of the trial court, and this court will not re-

verse an order granting a new trial unless error is clearly shown in respect to some pure, simple, and unmixed question of law, but when it appears from the record there was no sufficient ground for a new trial alleged by the complaining party and none otherwise is shown, this court will presume none existed, and that the trial court abused its discretion in making the order, and will reverse the same."

Thereunder plaintiff urges that, under defendant's evidence against which the demurrer was leveled, no other verdict was possible than that directed to be returned, for which reason the rule relied on is controlling, and that it thus was error of the court to sustain the motion for a new trial. We are therefore required to determine the merits of such defense as defendant may have under his evidence, and in so doing, under an elementary rule (Murnan v. Isbell, 133 Okla. 160, 271 Pac. 649; Munn v. Mid-Continent Motor Securities Co., 100 Okla. 105, 228 Pac. 150; Fahey v. Mitchel', 116 Okla. 296, 244 Pac. 761), we must proceed on the theory of its complete verity as to every fact actually and inferentially in legal contemplation thereby established.

The salient points of the evidence in substance showed that at the origin of the transactions sued on, the Oklahoma State Bank of Wapanucka desired to secure further working capital. Defendant was a stockholder and a member of the board of directors of the bank. At a meeting of the board, which he did not attend, defendant and one J. O. Surrell, president of the bank, were selected to negotiate such working capital from plaintiff. The bank then owed plaintiff between $90,000 and $100,000. Surrell represented to plaintiff that the bank shou'd have at least $40,000. Plaintiff agreed to make the loan provided the members of the board of directors of the bank would furnish security therefor. To this defendant refused, as of the board members he was the only one owning property sufficient for the purpose of security, and as he did not wish to involve his property and business with that of the bank in that manner, he thereupon prepared to return to his home. He was urged by plaintiff, through one of its officers, to remain over the following day after the negotiations were begun, as which time plaintiff would call a meeting of its board to further consider the question of financial assistance to the bank. At that meeting a plan was formulated whereby the proposed loan was to be made in the names of Surrell and defendant, in the sums of $15,000 and $25,000, respectively, with all of the other members of the board indorsing the notes, Surrell to give personal property as collateral security to the $15,000 loan, and defendant to give a real estate mortgage in security of the $25,000 loan, which was represented by two notes, $15,000 and $10,000, respectively. The loan was directly for the benefit of the bank. In the course of the negotiations one of plaintiff's executive officers suggested to defendant that the proceeds of the notes would be carried in the Wapanucka bank as a deposit in his name, but that the notes would be liquidated by the bank as it made collections in due course. With that understanding defendant agreed to the plan. The amount of the notes was credited to defendant's general account in the bank, and an equal amount was likewise credited to the bank on plaintiff's books, at which time the bank's account was shown to have been overdrawn by approximately $16,000. Defendant exercised particular care not to reduce his account in the Wapanucka bank below the amount represented by the loan. In due course the bank paid $5,000 on one of these notes. The bank later failed. The interest on the notes was paid by the bank to a period within two days of the closing of the bank by the State Bank Commissioner. To that time the notes had run for a period of approximately two years and from time to time had been extended by agreement of plaintiff with the bank. No demand had been made on defendant by plaintiff in relation to the notes during that period.

The other notes involved were given by defendant subsequent to the loan referred to, but were covered by a blanket provision of the mortgage, concerning which the evidence is somewhat indefinite other than to show that he did not receive the proceeds of one for $2,400, and that the last note for $600 represented an item of interest which the bank had failed to pay, and to which his attention was called by both Surrell and one of plaintiff's officers about two days before the closing of the bank.

When the bank was closed, defendant's account showed to be in the sum of $19,-992.61, the difference between that figure and $20,000, the amount then due on the original loan, being caused by an overdraft.

On cross-examination, defendant testified that upon notice from the liquidating agent of the bank and upon suggestion of his counsel, since no one was claiming the same, he had filed a claim with the Bank Commissioner for the deposit standing in his name, which represented the loan originally

made, on which claim in due course he had received a 20 per cent. dividend less a 100 per cent. assessment of his stock, and that he later assigned this claim to a member of his family to whom he was indebted, whereon a further dividend of 10 per cent. was paid.

Defendant offered evidence to show that prior to the filing of the suit and before any dividend was paid, he tendered an assignment of the claim to plaintiff in which, though not admitting his liability, he offered to transfer certain real property as in settlement of all of the obligations sued on, and that this tender and offer was by the plaintiff refused. The court rejected the proffered evidence.

The admitted evidence, plaintiff contends, shows that defendant is without a defense for two reasons, the one being in effect that though defendant be an accommodation maker of the papers sued on, his liability for the payment thereof is fixed; and the other being that if the papers were originally subject to any of the defenses asserted by defendant, these have been waived by his subsequent ratification of the transaction evidenced by his filing of the claim and acceptance and retention of benefits derived therefrom.

In support of the first reason, plaintiff relies principally on the rules of law as laid down in Duncan v. First Nat. Bank, 122 Okla. 58, 251 Pac. 69, First Nat. Bank v. Boxley, 129 Okla. 159, 264 Pac. 184, and Neylon v. Liberty Nat. Bank, 126 Okla. 188, 259 Pac. 545. While these cases appear to present an uncontrovertible argument in behalf of plaintiff, yet, upon an analytical test, we are constrained to the view that they are not decisive of the point thus made. It is to be observed that the transactions in those cases were basically conceived in a species of fraud in that the promissor advanced his credit to enable the accommodated party to do indirectly that which could not be done directly without encountering the heavy hand of the law and being called to account therefor, and this, coupled with a want of authority of the agent of the accommodated party to excuse nonperformance by the maker not being shown, precluded the defense grounded on the theory of an accommodation maker, the court thus applying the rule that a person will not be permitted to take advantage of his own wrong. In those circumstances it cannot be gainsaid that the principles there laid down are wholesome and proper rules of business conduct.

The decisive elements in the cases cited are not present in the case in hand. Here the defense raised by the evidence in this relation is that there was a contemporaneous agreement without which the instruments sued on would not have been executed. There was no suggestion of fraud in the negotiations culminating in the execution of the notes and mortgage, nor in the agreement inducive of their execution. Both parties looked upon the plan formulated by plaintiff through the eyes of good faith, and for two years so acted in relation thereto. The agreement showed, and was so interpreted by the acts of the parties, the manner in which they intended payment of the obligations evidenced under the written instruments was to be made, namely, that defendant's liability in effect was secondary to that of the accommodated party, the Wapanucka bank, and was thus postponed until the accommodated party was rendered incapable of liquidating said obligations. It is to be observed that there were not involved in any of the transactions at bar the rights of innocent third parties.

In Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. St. 165, there was involved a contemporaneous agreement as to the manner of payment of certain obligations given by one of the parties to the other affected thereby. Upon suit against the promissor, he pleaded the contemporaneous agreement, which was by the trial court held to be insufficient as a defense, and entered judgment against the promissor. The court, on appeal, in the syllabus, held:

"The existence of a contemporaneous parol agreement between the parties under the influence of which a note or contract has been signed, which is violated as soon as it has accomplished its purpose in securing the execution of the paper, may always be shown when the enforcement of the paper is attempted between the parties.

"It is fraud to secure the execution of an instrument by representations as to the manner in which payment shall be made different in important particulars from those contained in the paper, and, after the paper has been signed, to attempt to compel literal compliance with its terms regardless of the contemporaneous agreement without which it would never have been signed at all.

"In an action upon promissory notes given to secure deferred payments for town lots and secured by trust deeds for the lots, an affidavit of defense is sufficient which avers that at the time the notes were executed a parol agreement was made that the lots should at once be reconveyed to a trustee

who should hold them as a security for the sums due upon the notes, and exhaust the security thus furnished before the payment of the notes should be required of the maker, and that this agreement had not been carried out." See, also, 10 R. C. L. 1059, sec. 253.

The principle of that case was applied by this court in Mackin v. Darrow Music Co., 69 Okla. 1, 169 Pac. 497, and in Edwards v. City Nat. Bank of McAlester, 83 Okla. 204, 201 Pac. 233, in both of which cases there were involved contemporaneous agreements importing a manner of payment of obligations not disclosed by such written obligations, and in both the court holding that it is proper to permit the establishment of such an agreement, and that the parties shou'd be required to carry out such agreement where they had been entered into in good faith and no rights of innocent parties had intervened.

But plaintiff says that such an agreement is invalid, as its agent, an executive officer, had no authority to thus bind it, for which reason the same cannot be enforced against it. We may fairly infer from the evidence that the agreement had corporate sanction, and the evidence showed that plaintiff received and retained a benefit derived thereunder to the time of the filing of the suit, in that a payment of $5,000 and other items of interest had been paid to plaintiff pursuant thereto, and that it had received certain benefits of the proceeds of the original notes by application thereof to overdrafts of the Wapanucka Bank. Granting that the agreement was in excess of executive authority, these acts of plaintiff, we think, under an elementary principle, estop it to assert invalidity. This principle is statutory in this jurisdiction. Section 5247, C. O. S. 1921; Yeldell v. Bank of Elmer, 96 Okla. 184, 221 Pac. 422.

In support of the second reason, plaintiff relies on the fact that by his act in filing a claim for the deposit made in his name in the Wapanucka bank, and his having received and retained a dividend thereunder, and his later assignment of the claim to a third party, defendant is estopped to assert the defenses relied on, citing 21 C. J. 1208, Massachusetts Bonding & Insurance Co. v. Vance, 74 Okla. 261, 180 Pac. 693, Avey v. Van Voorhis, 42 Okla. 232, 140 Pac. 615, and In re Creech Bros. Lumber Co., 240 Fed. 8, which are to the effect, as expressed in 21 C. J., cited, that "a party to a transaction cannot ordinarily affirm it in part and in part disaffirm it," as is now attempted by defendant. There can be no doubt, as was

said in Scott v. Signal Oil Company, 35 Okla. 172, 128 Pac. 694, and in many other cases by this court, that, as a general proposition, "A person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary." These principles lend integrity to our commercial life and assure its continued stability. Courts uniformly apply them where the circumstances of the case call for their application.

Both parties here seek to apply the latter rule, one to the other; defendant apparently relying on plaintiff's conduct in point of priority in relation to the transactions as an effectual estoppel to take advantage of and to turn defendant's later acts to what he regards as a wrongful end. To show this was the purpose, as we understand it, of the proffered evidence rejected by the court, or in other words to show that defendant's later acts relied on by plaintiff as an estoppel were practically forced upon him by plaintiff's efforts to hold him primarily liable contrary to the contemporaneous agreement. There is force in defendant's argument. In Bigelow on Estoppel (6th Ed.) 748, the author says:

"When the position in question has been practically forced upon a party by his opponent's conduct, he will not be bound to stand by it."

In support of the text the author cites Potter v. Brown, 50 Mich. 436, wherein it was held that:

"A complainant is not necessarily estopped from seeking a relief that is inconsistent with positions theretofore taken, if it is defendant's fault that he has been practically forced to take them."

Another point arising upon the court's refusal to hear testimony concerning payments made to plaintiff by the Wapanucka bank subsequent to its insolvency, which defendant contends would show the same to have been unlawful, in the state of the record and in the view that we have taken of the admitted evidence and that proffered in relation to certain parts thereof, need not here be considered.

From this consideration of the effect of defendant's evidence, therefore, it becomes quite clear that there is evidence in the record from which the jury reasonably may have found that the defendant, under the contemporaneous agreement, was in a sense an accommodation maker of the principal instrument sued on in so far as his liability

was postponed under the manner of payment agreed upon, though in thus observing we are not to be understood as expressing an opinion upon the weight or credibility of the evidence involved, for we are plainly required, under the governing rule, to proceed upon the theory of its complete verity. It is not without the realm of sound reasoning to say that the trial court may have thus proceeded in the consideration of the grounds of its alleged error in sustaining the demurrer and directing a verdict set up in defendant's motion for a new trial, or that the court may have concluded that its rejection of the proffered evidence tending to excuse defendant's acts relied on by plaintiff as an estoppel prevented a fair trial of the cause, or that the case was in that state where an adjustment of equities between the parties was required.

It may be properly observed, however, that under the record, as we find it, this court is not advised upon which of the six grounds set up in the motion for a new trial the court predicated its judgment of sustention, it being simply recited in the order that, "the court having heard the argument of counsel and being fully advised, finds that said motion should be sustained." In these circumstances the observation of this court in Baker & Strawn v. Magnolia Petroleum Co., 124 Okla. 94, 254 Pac. 26, is here pertinent, to wit:

"The court may have sustained the motion for any one or more of the reasons set forth in the motion for a new trial, and sufficient ground may have been found for so doing, and this court has repeatedly held that the trial court, for the purpose of administering justice, has a very wide latitude and extended discretion in setting aside and modifying proceedings had in its own court, and where the trial court grants a new trial, it will not be reversed unless it can be seen beyond all reasonable doubt that the trial court has manifestly and materially erred with respect to some pure, simple and unmixed question of law, and that, except for such error, the ruling of the trial court would not have been so made, and all this must appear from the record."

In Isaacs v. Tull, 131 Okla. 138, 267 Pac. 1049, it is held:

"The judge who presides at the trial of a case, hears the testimony as it falls from the lips of the witnesses, observes their demeanor on the stand, and has full knowledge of all the proceedings had and done during the progress of the trial, is in a better position to know whether or not substantial justice has been done than any other person can be. Where such judge on presentation of a motion for a new trial sustains such motion, it will require a clear showing of manifest error and abuse of discretion before an appellate court would be justified in reversing such ruling of the trial court. * * *

"A motion for a new trial is addressed to the sound, legal discretion of the trial court, and where the trial judge who presided at the trial of the case sustains such motion, every presumption will be indulged that such ruling is correct."

Upon an examination of the whole record, therefore, we cannot say that the trial court abused its discretion in sustaining defendant's motion for a new trial, for which reason the judgment of the district court is affirmed.

LEACH, FOSTER, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 20 R. C. L. p. 227; 3 R. C. L. Supp. p. 1046; 4 R. C. L. Supp. p. 1347; 5 R. C. L. Supp. p. 1097; 6 R. C. L. Supp. p. 1199. See "Appeal and Error," 4 C. J. §2813, p. 830, n. 45. "New Trial," 46 C. J. §465, p. 407, n. 18.