## OILTON STATE BANK v. ROSS et al.

No. 13377—Opinion Filed May 27 1925.

Rehearing Denied June 17, 1924.

Second Rehearing Denied Jan. 27, 1925.

(Syllabus.)

**1. Trial—Demurrer to Evidence—Effect.**

A demurrer to the evidence admits the truth of all the evidence adduced and all the facts which it tends to establish as well as every fair and reasonable inference to be drawn therefrom.

**2. Evidence—Bills and Notes—Parol Evidence to Negative Liability.**

The law will not permit the maker of a note, where there is a consideration therefor, to show an oral agreement at the time of its execution that he was not to be liable thereon, for the reason that this would violate the rule forbidding the contradiction of a written instrument by parol evidence, but this rule is not infringed by permitting it to be shown by parol what caused the party thus to obligate himself, and thereby test the question of whether he is legally bound, as the writing imports, or whether he is by any cause wholly or partially freed from liability thereon.

**3. Bills and Notes—Lack of Consideration as Defense.**

As between the original parties to a note, or between the payer and any person not a holder in due course, the consideration for the note may always, in the absence or an estoppel, be inquired into, and a want or failure of consideration constitutes a good defense.

**4. Appeal and Error—Review—Conflicting Evidence.**

Where, in an action at law, tried to the court, a judgment is rendered upon conflicting evidence, this court will not weigh the evidence, but if there is any evidence reasonably supporting the judgment, such judgment will not be disturbed.

**5. Sufficiency of Evidence.**

Record examined, and held, that there is

evidence reasonably supporting the judgment.

'Error from District Court, Pawee County; Redmond S. Cole, Judge.

Action by the Oilton State Bank against B. B. Ross and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Thurman S. Hurst, John R. Miller, John G. Ellinghausen, and Edwin A. Ellinghausen, for plaintiff in error.

McCollum & McCollum, for defendants in error.

NICHOLSON, J. This action was instituted by the Oilton State Bank, as plaintiff, against B. B. Ross and Terry Marlin, as defendants, to recover the sum of $2,500, with interest and attorneys' fee, upon a promissory note made, executed, and delivered by B. B. Ross to the First National Bank of Oilton, payment of which was guaranteed by the defendant Terry Marlin by an instrument in writing reading as follows:

"Oilton, Oklahoma,
"March 11, 1919.

"First National Bank,

"Oilton, Okla.

"Gentlemen: I will guarantee payment on the note which I ask you to carry signed by B. B. Ross. I prefer not to indorse note, but you can hold this letter and I will protect you against any loss on same.

"Mr. Ross owns a farm and other property. If this is not satisfactory, let me hear from you.

"Yours truly,
"Terry Marlin."

It was alleged in the petition that the plaintiff had purchased the First National Bank of Oilton, and was the owner of the property and assets of said bank, including the note sued upon. The defense relied upon was that the note and guaranty were executed and delivered to the bank without consideration, and solely for the accommodation of the bank, and at its request. A jury was waived and the cause tried to the court, which trial resulted in a judgment in favor of the defendants, from which the plaintiff has appealed.

Plaintiff's first contention is that the court erred in overruling its demurrer to the evidence of defendants.

Both Ross and Marlin testified that the note was given without consideration and

solely for the accommodation of the bank, and Marlin testified that the guaranty was executed without consideration, at the request of the officer of the bank, and solely for the accommodation of the bank.

A demurrer to the evidence admits the truth of all the evidence adduced, and all the facts which it tends to establish, as well as every fair and reasonable inference to be drawn therefrom (Singer v. Citizens Bank of Headrick, 79 Okla. 267. 193 Pac. 41; Boatman v. Coverdale, 80 Okla. 9, 193 Pac. 974; Sharum v. Sharum, 82 Okla. 266, 200 Pac. 176; Goar v. Brown, 82 Okla. 227, 200 Pac. 156); therefore, the truth of the evidence of the defendants was, for the purpose of the demurrer, admitted. But it is said that Marlin's testimony shows that he executed the guaranty of the note for the purpose of deceiving the bank examiner, and under these circumstances he is precluded from setting up any defense thereto, and the cases of State Bank of Moore v. Forsyth (Mont.) 108 Pac. 914, 28 L. R. A. (N. S.) 501, and German American State Bank v. Watson, 99 Kan. 680, are cited as sustaining this position.

In Bank of Moore v. Forsyth, supra, the facts were that the defendant, at the request of the cashier of the bank, executed the note involved for the purpose of substituting this note for the notes of the cashier, held by the bank. The bank parted with consideration for the note, and the court held that the bank was entitled to recover regardless of the fact that the defendant actually received nothing for the note. The first paragraph of the syllabus in that case reads:

"It is a valid defense to the enforcement of a note against the maker, by the party to whom it was delivered, that the note was without consideration and was delivered on condition that the maker should not be held liable thereon."

In German American State Bank v. Watson, supra, the facts were that one Blitz applied to the bank for a loan, but at that time he had already borrowed from the bank as much as it could loan to any one individual. The president of the bank advised the defendant of this situation, and requested him to execute a note for the amount it loaned to Blitz, and stated to the defendant that he would incur no obligation by the making of said note. The court held that while the note was made at the request of the president of the bank, it was in fact made for the accommodation of Blitz, who received the consideration therefor, and further held that under the facts in that case the maker of the note

could not defend an action thereon by showing that it was executed without benefit to him under an agreement exempting him from liability, in order to enable the bank to which it was payable to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that having voluntarily signed the note in order that the bank examiner might believe it to be an asset of the bank, he ought not to be permitted to deny that in effect. It will be observed that there was a consideration for the note, viz., the money loaned to Blitz. This case does not go to the length of holding that the payment of a note executed entirely without consideration and solely for the accommodation of the payee may be enforced by such payee, and we have been referred to no authority so holding.

While the law will not permit the maker of a note, where there is a consideration therefor, to show an oral agreement at the time of its execution that he was not to be liable on the note, for the reason that this would violate the rule forbidding the contradiction of a written instrument by parol evidence, this rule is not infringed by permitting it to be shown by parol what caused the party thus to obligate himself, and thereby test the question of whether he is legally bound as the writing imports, or whether he is by any cause wholly or partially freed from liability thereon. Rice v. Rice, 101 Kan. 20, 165 Pac. 799.

By the provisions of section 7698. Comp. Stat. 1921, absence or failure of consideration is a matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise. As between the original parties to a note, the consideration therefor may always, in the absence of an estoppel, be inquired into, and a want or failure of consideration constitutes a good defense. 8 Cyc. 31, and cases there cited; Bank of Commerce of Sulphur v. Webster et al., 70 Okla. 68, 172 Pac. 943; Jesso French Piano & Organ Co. v. Bodovitz, 73 Okla. 87, 174 Pac. 765.

There is no question of a holder in due course involved in this case. The note in question was given to the First National Bank of Oilton, which was afterwards by its stockholders and officials, denationalized, and the plaintiff, a state bank, succeeded to its assets and liabilities. An estoppel was not pleaded, and there is no

evidence in the record of any conduct upon the part of the defendants which would estop them from questioning the consideration for the note. The trial court properly overruled the demurrer to the evidence.

This leaves for consideration the question of whether the judgment is supported by the evidence, for this being an action at law, the judgment will not be disturbed if there is competent evidence reasonably tending to support it. Elson v. Walker, 80 Okla. 237, 195 Pac. 899; Jackson v. Dardin, 82 Okla. 256, 200 Pac. 223; Katterhenry v. Williamson, 78 Okla. 221, 190 Pac. 404; Manus v. Boardman Co., 79 Okla. 90, 191 Pac. 362.

Marlin testified that he was formerly interested in the First National Bank of Oilton, and that he sold his interest therein to C. G. Morris and Claude Phillips; that Morris was cashier and Phillips active vice president of the bank at the time of the execution of the note in controversy, which was executed some time after he had sold his interest in the bank. He testified in regard to the transaction, in part, as follows:

"Q. Did you have a conversation with either Morris or Phillips relative to a note being put in the bank? A. There wasn't much of a conversation. They spoke to me about it, yes, sir. Q. Which one spoke to you about it? A. Morris first spoke to me about it, they were both at the desk when they talked to me about it, but Mr. Morris was the first one to ask me about it. Q. What was it that Mr. Morris asked you about the note? A. Morris said to me that 'Our deposits have dropped off the last few days like everything; our bank balance, our exchange is very low and we have got to do something about it.' 'Well,' I said, 'You better run over to Tulsa and borrow a few thousand dollars to carry you over here for a little while.' He said, 'We were wondering if you would object to letting us have your note to use here in the bank for a short time.' I did object; I said, 'I would rather not do it.' Q. What reason did you give for not wanting to do it? A. I said, 'I think I will go in the banking business some place again in the state of Oklahoma, and don't like to have my note out for the bank examiner to criticize.' That was the reason I objected to making the note myself. Q. Then what followed after the conversation? A. Just at that time they said, 'We will go over to Yale, we have some friends over there that we can get to supply us with a note and we will go over there and get one as quick as we can get away.' Q. Now, then, was there anything ever said to you about wanting you to assist them in getting the note? A. Yes, sir; later in the day I was leaving

there and going over to Glencoe, but was coming back to Oilton in a day or two later Just before I started to the train to go to Glencoe, I think it was Mr. Morris said to me, 'Will you be in Pawhnee?' And I said, 'Yes, I am going to Pawnee and going to Glencoe.' He said, 'Don't you know someone over there that you could get to make us the note?' He said, 'You can tell them— you can assure them that there will be no obligation resting on them and, get them to make us a note that we can use here for a little while.' He said, 'It will be a great accommodation to us.' We—I first said to Morris, 'I don't much like to do that.' But he insisted and I said, 'I will see what I can do about it.' So I went over to Glencoe and asked Mr Ross while I was there. I asked him if he would object to signing such a note and he said, 'I will sign it if you want me to.' Q. Then after this note was signed by Mr. Ross in Glencoe, what if anything did you do with the note? A. I carried it back over to Oilton and turned it over to the First National Bank. Q. What if anything was said relative to the Ross note? A. They thanked me for it, and that was all that was said at that time. They took it and put it away some place. Q. Then what if anything was done later in reference to the note? A. I think it was the next day they asked me what date the bank examiner had been there and I said to them to look on the books, that I didn't remember. They went and looked on their books to find out just when we had been examined and they found that it was only a short time until they were due another examination. They said to me, 'What do you think Mr. ——, the bank examiner will say about this Ross note?' I says, 'I don't know, he may cuss you out a little about it.' 'Well,' they said, 'We would hate to get in bad with the bank examiner over that.' I said. 'Yes, you don't want to do that.' They asked me if I wouldn't indorse it and I said no, I wouldn't want to do that. There was nothing more said about it then until soon before I went to the train again to come back to Pawnee, and they come to me again about it. and said, 'If you won't indorse that note won't you give us a letter of some kind so that if when the examiner comes along he doesn't object to it that we can satisfy him, and then as soon as he is gone we will send this back to you? Well, I finally said, 'Yes, boys, I guess I will do that.' I hated to turn them down. I said, 'I guess I will do that.' Q. Did you receive any consideration whatever for signing this letter? A. Not one nickel; no, sir. Q. You say it was made when in reference to the time the note was made? A. The letter? Q. Yes. A. It was made two or three days after the note was made, about three days I think. Q. Do you know whether or not Mr. Ross received any consideration of any kind whatever for making this note? A. He did not."

The defendant Ross testified as follows: "Q. Do you remember the occasion of signing a note over in Glencoe in 1919? A. I remember that fact. I don't remember the date. Q. Who was it presented the instrument to you to sign? A. Mr. Marlin. Q. What statement, if any, did he make to you in asking you to sign it? A. Well, he asked me if I would sign a note for the bank, that it incurred no obligation and was an accommodation note. Q. Is that about all that was said? A. That is about all. Q. And you signed it? A. Yes, sir. Q. Did you receive anything for signing it? A. No, sir. Q. Did you know at the time what bank it was on? A. No, I didn't. Q. Did you give enough attention to even read the note? A. I didn't read it. Q. You never had any business dealings with this bank? A. No, sir. Q. Didn't you know anything about them or any of their officers? A. No."

C. G. Morris testified that the note and guaranty were given in lieu of a note of Marlin's for the sum of $2,500, but Marlin denied this.

The evidence as to one material fact, viz., whether or not there was a consideration for the note, is conflicting, and under these circumstances this court will not weigh the evidence, but if there is competent evidence reasonably supporting the judgment, the same will not be disturbed. Hays v. Azbill, 76 Okla. 313, 184 Pac. 945; Stewart v. Riddle. 76 Okla. 70, 184 Pac. 443; Railway Mail Association v. Edmonds, 79 Okla. 33, 191 Pac. 159; Knights & Daughters of Tabor v. Chestnut, 82 Okla. 192, 200 Pac. 148.

There is competent evidence reasonably supporting the judgment, therefore such judgment will not be disturbed.

The judgment is affirmed.

JOHNSON, C. J., and BRANSON, WARREN, and GORDON, JJ., concur.