Note.—See under (1) 8 C. J. p. 502, §710; 41 C. J. p. 697, §716. (2) 41 C. J. p. 693, §712. (3) 41 C. J. p. 697, §716. (4) 38 Cyc. pp. 1534, 1574. (5) 8 C. J. p. 1062, §1376. See under (1, 3) anno. 29 L. R. A. (N. S.) 351; 44 L. R. A. (N. S.) 395; L. R. A. 1918F, 1148; 34 A. L. R. 1377; 3 R. C. L. p. 1072; 1 R. C. L. Supp. p. 973; 4 R. C. L. Supp. p. 234; 6 R. C. L. p. 220.

## NEYLON v. LIBERTY NAT. BANK of PAWHUSKA.

No. 17533. Opinion Filed Sept. 20, 1927.

(Syllabus.)

1. Bills and Notes—Consideration—Benefit to Third Party and Detriment to Payee.

Where a benefit is conferred on a third party and a detriment is suffered by the payee of a note at the instance of the maker thereof, it will be sufficient consideration to support the notes, even though the maker thereof received no personal benefit by reason of the execution and delivery thereof.

2. Same—Accommodation Note to Bank by Third Party for Loan to Customer Already Loaned the Legal Limit—Customer not Bank the Party Accommodated.

Where a bank desires to make an additional loan to a customer, but cannot do so because it has already loaned him as much as the law permits, and another person is induced to give his note for the amount, the borrower, who receives the money, and not the bank which pays it out, is the party, for whose accommodation the note is signed, notwithstanding the cashier of the bank may have promised to hold the payor harmless in the matter.

3. Same—Maker of Note Estopped to Deny Liability.

The maker of a note cannot defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank, to which it was payable, to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that, having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank, he ought not to be permitted to deny it that effect.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by the Liberty National Bank of Pawhuska against G. A. Neylon. Judgment for plaintiff, and defendant appeals. Affirmed.

Humphrey & Spence, for plaintiff in error.

J. A. Tillotson and J. C. Cornett, for defendant in error.

MASON, V. C. J. The Liberty National Bank of Pawhuska, as plaintiff, brought suit against J. A. Neylon, as defendant, to recover the sum of $471.80, with interest and attorney fees, upon a promissory note. The defendant filed answer in which he admitted the execution of the note, but alleged that he was not liable thereon, be-

cause it was .executed without consideration and for the accommodation of the plaintiff, and for the further reason that the cashier of plaintiff bank had agreed that the defendant was not to be held liable thereon. For cross-petition, he alleged that the plaintiff had received $128.20 of defendant's money, and, without his consent, had applied it on said note, for which amount he prayed judgment. Plaintiff filed reply consisting of a general denial and allegations that at all times mentioned in his answer, the defendant was a stockholder and director of the plaintiff corporation and was estopped from pleading that he executed said note as an accommodation to the plaintiff and without consideration. It was also alleged that the defendant was estopped from making the further defense pleaded in his answer for the reason that such conduct was a violation of the banking laws of the United States and was contrary to and against public policy.

The defendant, upon the trial of the case, assumed the burden of proof and after all his evidence had been introduced, the trial court sustained the plaintiff's motion, and instructed the jury to return a verdict in favor of the plaintiff for the full amount sued for. Motion of defendant for an instructed verdict on his cross-petition was denied.

The defendant has perfected his appeal and for reversal counsel urge that the evidence of the defendant was sufficient to constitute a defense to the plaintiff's action.

Defendant's evidence, in substance, is as follows:

That at the time the note sued on was made, the defendant was a stockholder and director of the plaintiff bank and employed therein; that both the president and the cashier were out of town on their vacations; that the cashier, before leaving, gave instructions to the employees of the bank, including the defendant, to take care of Frank and Mary Simpkins, customers of the bank; that the Simpkins came to the bank on the date of the note sued on for the purpose of borrowing more money; that the records of the bank disclosed that they had previously borrowed the full amount authorized by law; that the defendant, Neylon, talked the situation over with John Evans, another employe of the bank, after which the defendant executed the note sued on herein and deposited the $600 to the credit of the Simpkins, and it was subsequently checked out and used by them; that at the same time Frank and Mary Simpkins executed their note for $600 and delivered it to the defendant, which he carried in the cash drawer of the defendant bank, but the defendant testified that the note never became a part of the assets of the bank and that later, when he severed his connection with the bank, he took the note with him. The defendant further testified that he never received any portion of the consideration of the note sued on herein and that it was executed for the sole purpose of enabling Frank and Mary Simpkins to borrow additional money after the limit, as provided by law, had been reached. The defendant admitted, on cross-examination, that no agreement had been made by the plaintiff bank not to hold him liable at the time said note was executed; that it was his intention to substitute the note he held for the note sued on herein, after the Simpkins had reduced their indebtedness to such an amount as to make the additional $600 a legal indebtedness. It seems that this was never done, and for that reason he was unable to exchange the notes, but he contends that he received no consideration for his note and that it was executed wholly for the benefit of the plaintiff bank and, therefore, he is not liable thereon.

The fact that the defendant, as maker of the note, received no benefit from the transaction, did not constitute a defense. The loan made by the bank to Frank and Mary Simpkins was sufficient consideration. Doxey v. Exchange Bank of Perry, 19 Okla. 183, 92 Pac. 150. See, also, Wright v. McKitrick (Kan.) 43 Pac. 977; 6 Cyc. 690; 8 Corpus Juris, 214. In Doxey v. Exchange Bank of Perry, supra, the court said:

"The real test is: Did the payee part with value or waive a legal right by reason of the execution and delivery of the note? If he did, it is sufficient consideration to authorize a recovery for the amount due thereon."

Although the defendant testified that he was not to be bound by said note, but executed it for the accommodation of the plaintiff bank, the facts set out disclose that in legal contemplation Frank and Mary Simpkins were the parties accommodated.

The rule, as stated in 8 Corpus Juris, 254, is as follows:

"The accommodated party is he to whom the credit of the accommodation party is loaned, and is not necessarily the payee, since the inquiry always is as to whom did the maker of the paper loan his credit as a matter of fact. And the fact that one derives some incidental benefit from the paper will not make it accommodation paper as to him."

The foregoing text cites the case of Thom

v. Kibbee, 62 N. J. L. 753, 42 Atl. 729, where the court said:

"The accommodated party, in a legal sense, is the person to whom the credit of the accommodating party is loaned, not a third person who may receive an advantage by the loan of the credit."

In our opinion, the credit of the defendant herein was loaned not to the plaintiff bank, but to the Simpkins; the effect of the transaction being to enable them to borrow upon the credit of the defendant after the credit which the bank, under the law, could extend them had been exhausted. The evidence that the Simpkins had an existing indebtedness with the plaintiff bank for the full amount which it was permitted by law to carry and that the defendant signed said note pursuant to instructions and for the accommodation of the plaintiff bank does not affect the legal relation of the parties.

The situation is entirely different from that in the cases wherein it is held that a bank is bound to protect the maker of a note executed to it for its accommodation, the proceeds of which it retains. There is no contention in the instant case that the proceeds of said note were retained by the bank, but, on the contrary, the evidence discloses that the money was loaned to the Simpkins upon the strength of the note signed by the defendant and without which the loan could not have been made.

We are not unmindful of the cases which hold that a defense to a note is established by a showing that it was given to a bank, which parted with nothing on the strength of it, merely to enable an officer to deceive the examiner, but the present case is distinguishable from those cases on the ground already stated that in the case at bar there was a consideration for the note.

The plaintiff in error cites and relies very largely upon the cases of Oilton State Bank v. Ross, 108 Okla. 24, 234 Pac. 567, and Lindsay State Bank v. Forbis, 108 Okla. 126, 235 Pac. 470. In these cases, however, there was no consideration for the notes sued upon, but they were given for the purpose of taking the place of excess loans which previously had been carried by the bank and for the purpose of deceiving the bank examiner.

The opinion in Oilton State Bank v. Ross, supra, distinguishes that case from German American State Bank v. Watson, 99 Kan. 686, wherein the facts were practically identical with those in the case at bar, because there was a consideration in the Ger-

man American State Bank Case and none in the Oilton Bank Case.

The correct rule seems to be that where there is no want of a valid consideration and the note was not, in legal contemplation, given for the accommodation of the bank, the maker cannot defeat its payment by showing that with his knowledge it was intended to mislead the bank examiner as to the facts, condition, and securities.

Furthermore, conceding that the evidence of the defendant had supported his allegations of an agreement between the cashier of the bank and the defendant that he would not be held liable on said note, yet this would not constitute a defense. By the weight of authority, an executive officer of a bank has no authority to bind it by a promise that one who signs a note shall not be required to pay it.

In Elling v. Bank of Jefferson, 114 Okla. 147, 244 Pac. 793, this court held:

"Where a cashier of a bank represents to persons executing promissory accommodation notes that the bank will loan money to a third party and the payors of the notes will not be called upon to pay the same, in the absence of a showing of specific authority vested in the cashier to make such representations, such representations constitute no defense to an action by the bank on the notes."

See, also, note 28 L. R. A. (N. S.) 501.

In addition to this, we take knowledge of the federal statutes which limit the amount a national bank can loan to any one person, and the evidence of the defendant herein is that the plaintiff had reached this limit in making loans to the Simpkins, and that he executed the note sued on in order to deceive the bank examiner and permit the plaintiff to loan more money to the Simpkins.

To permit the contractual relation of the parties to be controlled by such agreement would be to countenance and give effect to a secret arrangement entered into for the purpose of evading said law. The public is greatly interested in the management, control, and regulation of the banking business; banks are permitted to do business through the courtesy and permission of law and subject to its provisions for the protection of the depositors, creditors, and stockholders. Public faith and credit and honesty in business transactions are the main assets of a bank. To sanction any arrangement, whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities, would tend to defeat

the entire purpose of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank a favorable appearance for the purpose of examination, but less favorable for the purpose of liability or enforcement. The defendant having signed said note, and it being a part of the bank's assets, an understanding or agreement of nonliability would be neither proper nor tenable. It would amount to a fraud upon the depositors, stockholders, and the public to permit an agreement that the obligation which the defendant had assumed was, in fact, not an obligation.

This is not in conflict with the rule announced in Oilton State Bank v. Ross, supra, as the court in the body of the opinion in that case says:

"An estoppel was not pleaded, and there is no evidence in the record of any conduct upon the part of the defendants which would estop them from questioning the consideration for the note."

Nor is it in conflict with the rule announced in Lindsay State Bank v. Forbis, supra, as the court in the body of the opinion in that case said:

"The question whether the facts pleaded in the answer were violative of public policy and whether by reason of such public policy the defendant was estopped to plead such matters have not been raised in this case."

We must conclude from the foregoing that the evidence of the defendant in the instant case did not constitute a defense and that the trial court properly instructed a verdict for the plaintiff.

The judgment of the district court is affirmed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 8 C. J. p. 214, §348; 3 R. C. L. 930. (2) 8 C J. p. 254, §401. (3) 8 C J. p. 720, §1007; 3 R. C. L. 1137.