David O. HARRIS, Plaintiff in Error,

v.

Bill SNELL, Defendant in Error.

No. 41098.

Supreme Court of Oklahoma.

Jan. 6, 1967.

Duard C. Willoughby, Ada, for plaintiff in error.

Steven E. Smith, Tulsa, for defendant in error.

PER CURIAM:

Appeal by David O. Harris (defendant below) from a judgment rendered on jury verdict in favor of Bill Snell (plaintiff below) for $750.00. The parties will be referred to by name or by their trial court designation.

This action was instituted by Bill Snell in the Common Pleas Court of Tulsa County, Oklahoma, against David O. Harris. The plaintiff in his petition alleged that the defendant was indebted to him for money loaned in the total sum of $1108.92, made up of the following items, to-wit:

$750.00 loaned for the purchase of a car;
14.00 paid for a crankshaft pulley for the same car;
209.10 for a motor for said car;
135.82 for labor and parts for the installation of the motor.

The principal controversy centered around the item of $750.00 which was represented by a check dated April 19, 1961, given by the plaintiff to defendant and on the check was written the following: "For Commission on 55000 feet 2″ line Pipe."

The plaintiff specifically alleged full compliance with the Intangible Tax Laws of the State of Oklahoma. The plaintiff filed an amendment to his petition, attaching an Exhibit, the check in question, and explaining the reason for referring to the check as having been given as commission in connection with the sale of the pipe.

The defendant filed a cross-petition alleging that he had engaged in a joint venture with the plaintiff for the purchase and sale of line pipe and that there was still due him, in addition to the $750.00 already paid, as represented by the check in question, an additional sum of $1280.00, for which he asked judgment, and also filed his answer generally denying the allegations of plaintiff's petition as amended and specifically denying that he had ever borrowed money from the plaintiff.

The petition in the case was filed February 8, 1962, and the trial on September 24, 1963, resulted in a verdict for the plaintiff for $750.00, after demurrer was sustained to defendant's evidence on his cross-petition.

A motion for new trial was duly filed by the defendant on October 4, 1963, and was overruled by the court on November 14, 1963, in the absence of defendant and no notice of appeal being given by defendant within 10 days therefrom. Thereafter, on December 13, 1963, an order was made vacating the order overruling the motion for new trial and setting the defendant's motion for new trial for hearing on December 26, 1963, but which hearing was continued until January 10, 1964, when said motion was overruled and notice given in open court of intention to appeal to the Supreme Court of the State of Oklahoma, and an appeal was duly lodged with the Supreme Court on July 8, 1964.

Plaintiff, Bill Snell, has raised a point that the court lacked jurisdiction to hear said appeal for the reason that the motion for new trial had been originally overruled

on November 14, 1963, and that the District Court lost any jurisdiction to vacate said order after the expiration of 10 days from November 14, 1963, because the defendant had failed to give notice of his intention to appeal, as required by Title 12, Okl.Stats., Sec. 954.

 We have concluded there is no basis for this objection because the court during the term has jurisdiction at its discretion to vacate or modify any such orders made. See Frey v. Glenn, 206 Okl. 28, 240 P.2d 1061, where the following language is used:

"We are committed to the rule, expressed in numerous decisions of this court, that the trial court is vested with inherent jurisdiction to vacate its orders and judgments within the term in which they are made and this court will not disturb such action where it appears that the trial court has exercised its sound discretion. Selected Investments Corporation v. Bell, 201 Okl. 408, 206 P.2d 989."

See also Barnes v. Bruce, 63 Okl. 270, 165 P. 405.

The cases cited by the plaintiff are not applicable to the situation involved in this case, and we hold that this court has jurisdiction to hear and determine the propositions of error here involved.

The defendant sets out three grounds on which he asks for a reversal of the judgment of the trial court. These are set out as follows, to-wit:

1. Error of the trial court in admitting oral testimony to explain the check of April 19, 1961, given by defendant in error to plaintiff in error;

2. Error of the trial court in sustaining the demurrer of the defendant in error to the evidence offered in support of the cross-petition of plaintiff in error;

3. The trial court lacked jurisdiction to submit said cause to the jury for failure on the part of the defendant in error to prove compliance with the Intangible Tax Laws of the State of Oklahoma.

We will discuss these grounds in the order named.

The plaintiff, to show the amount alleged to be due and owing from the defendant, introduced the check dated April 19, 1961, in the amount of $750.00, which he had given to the defendant, on which had been written the notation heretofore referred to. The plaintiff was permitted to explain this by testifying that he and the defendant had entered into a deal for the purchase of some line pipe that was to be dug up and sold whereby, after the plaintiff had paid all the expenses, the profits were to be divided equally, and that while this pipe was being taken up for the purpose of cleaning and making it ready for sale, he had given the check to the defendant for this $750.00. This is shown by the following testimony of Mr. Snell, as follows:

"A. Yes, he said if I would go ahead and write him a check for seven hundred and fifty dollars, when he got the pipe all out of the ground and sold, then we would set it up and if we happened to lose, then he would pay it back and if we made a profit we would deduct the seven hundred and fifty dollars from his part of it.

"Q. One additional request, Mr. Snell, would you read the date of the check?

"A. 4/19/61.

"Q. Was this during the time period when this salvage operation was taking place?

"A. It was just about the time the salvage operation stopped."

Thus, it would seem from the testimony of Mr. Snell in this case that he was letting Mr. Harris have the $750.00 and if there were profits from the joint venture of the purchase and sale of the pipe, then this would be credited on the amount due from Mr. Harris, but if there were no profits and in fact losses, in connection with the sale of the pipe, then the $750.00 was to be treated as a loan and consequently repaid. The evidence of Mr. Snell in connection with

the purchase and sale of the pipe, indicated there was a loss of about $1600.00 in connection with the deal, exclusive of approximately $1500.00 of expense which Snell incurred and which he did not charge against the account. These expenses, including the use of his own trucks and employees, were incurred in connection with the enterprise. Since the evidence indicated a loss on the pipe deal, then, of course, under Mr. Snell's testimony, this $750.00 was to be repaid.

The other items of account set out were bills incurred in connection with the repair of the automobile in question, for all of which the defendant denied any responsibility and in fact denied any knowledge of the incurring of such expenses.

■ Taking this view of the testimony, the statement in the check about the commission is not actually in variance with the real agreement between the parties. This check did not purport to set out the agreement. The agreement was wholly in parol and the check was something in the nature of a receipt for the payment of the money to Mr. Harris, and Mr. Harris in his testimony acknowledged that he cashed the check and used it in the purchase of a car but, of course, did deny that the money was to be in any event repaid. That question, however, was resolved by the action of the jury in rendering the verdict in question.

Since the whole agreement in this case was parol and not written, it would have to be established by parol evidence.

In Hogue v. McClain County Nat. Bank, 173 Okl. 122, 47 P.2d 575, this court says:

"As between the original parties to a note, or between the payer and any person not a holder in due course, the consideration for the note may always, in the absence of an estoppel, be inquired into, and a want or failure of consideration constitutes a good defense. Section 11327, O.S.1931. Oilton State Bank v. Ross, 108 Okl. 24, 234 P. 567; First State Bank of Gowen v. Miller, 118 Okl. 49, 246 P. 591; Lindsay State Bank v. Forbis, 108 Okl. 126, 235 P. 470; First National

Bank of Tulsa v. Golden Glow Refining Company, 143 Okl. 299, 288 P. 960. This, the defendants in error concede."

We also quote from the case of Henry v. Hope, Okl., 317 P.2d 239, as follows:

"Even if this $50 per month is construed to be the consideration for the execution of the third lease, the result would be no different. Where, in a contract, the statement of the consideration is a mere recital amounting to only a receipt and is not contractual in form, parol evidence is admissible to prove the true consideration. Clarke v. Clarke, 194 Okl. 455, 152 P.2d 908. For an excellent discussion of the rule and its application, see Wigmore on Evidence, 3rd Ed., § 2400 et seq., especially § 2430 et seq., on 'Partial Integration.' "

In the citation in Wigmore on Evidence, 3rd Ed., mentioned in this last decision, that authority, in referring to a statement in an instrument that is not contractual, says:

"A receipt—i. e., a written acknowledgment handed by one party to the other, of the manual custody of money or other personalty—will in general fall without the line of the rule, i. e., it is not intended to be an exclusive memorandum and the facts may be shown irrespective of the terms of the receipt This is because the receipt is merely a written admission of a transaction independently existing, and like other admissions is not conclusive."

See also Southard v. Arkansas Valley & W. Ry. Co., 24 Okl. 408, 103 P. 750.

See also the following statement from 20 Am.Jur., Evidence, Sec. 1106, p. 969, reading as follows:

"Writings Not Constituting the Contract.—There may be writings relating to the contract between the parties which do not embody the contract itself. In such a case, where the contract rests upon an oral agreement, parol evidence is admissible as to the terms of the contract notwithstanding the writings. Letters and telegrams, private or other memoranda, book entries or accounts, and other

miscellaneous writings of an informal nature may be varied or explained by parol evidence when they constitute merely memoranda of the agreement itself."

Construing, therefore, the evidence as a whole in this case, we cannot see that the court committed error in admitting oral testimony to explain the full and complete terms of the agreement made between the parties in connection with the purchase of the car and the pipe, and explaining the circumstances surrounding the execution and delivery of the $750.00 check.

■ Defendant also complains of the action of the trial court in sustaining the demurrer to the evidence offered by him in support of his cross-petition. In the cross-petition the defendant had asked for judgment for $1280.00, which purported to be the amount due for one-half of the profits realized from the sale of the pipe, after taking into consideration the $750.00 previously received by him and represented by the check of $750.00 dated April 19, 1961. Defendant admitted that the plaintiff was to assume the sole supervision of the work in connection with digging up the pipe and selling the same. No evidence is offered that the defendant ever saw the pipe after it was dug up and moved into the yard of the plaintiff. There was some general testimony to the fact that the pipe was to be sold for from 27½ to 32½ cents per foot, whereas the proof showed plaintiff had sold approximately 7200 feet at 30 cents per foot, approximately 17000 feet at 25 cents, and approximately 12800 feet at 20 cents per foot. The specific evidence on this was to the effect that much of the pipe was junk that had been in the ground for thirty years and quite a substantial part was damaged in digging it up, and that the result of the operations was that the expense in connection with this joint adventure came to $8432.05, whereas they netted only the sum of $6829.36, leaving a loss of approximately $1600.00. The only item specifically challenged by the defendant was an insurance item of $326.26, and the testimony of defendant was that there had been a refund on this of $286.26. This would not substantially change the rights of the parties in this joint venture, and our conclusion is that the evidence of the defendant was so general and lacking in specific proof as to any profits realized from it that the court could have reached no other conclusion but that the proof did not justify the submission to the jury of the claim asserted in the cross-petition of the defendant.

Defendant further complains of error on the part of the trial court in submitting said cause to the jury when the plaintiff had failed to prove compliance with the Intangible Tax Laws of the State of Oklahoma.

The petition, as filed in the lower court, specifically set out that it was a suit on account and set out the various items comprising the same and specifically alleged full compliance with the Intangible Tax Laws.

The main item of the account was the $750.00 check dated April 19, 1961, and the other items making the total of $1108.92 were items of $14.00 which was for repairs on the automobile, represented by check dated June 3, 1961, and $209.10 represented the amount paid for a motor which was installed in the car, and the additional amount of $135.82 represented the labor and cost of repairs in replacing the motor in the car in question. Also, before closing the case, the plaintiff offered in evidence Exhibit 7, being a 1963 Intangible Tax Return, on the basis of which a Tax Receipt for $3.88 was issued by the County Treasurer of Tulsa County for the year 1963, bearing date of September 24, 1963.

Objection was made to the fact that the 1962 tax had not been paid upon this account, and at the close of the trial the defendant demurred to the evidence for the reason, among other grounds, that plaintiff had failed to comply with the Intangible Tax Laws of the State of Oklahoma, which demurrer was overruled by the court.

The applicable statute is Section 68, O.S. 1961, 1515, (68 O.S.Supp.1965, Sec. 2515), a portion of which we quote as follows:

"In every action or suit in any court for the collection of any bond, note, account receivable, or other intangible personal property as defined in § 1501 of this title, the plaintiff must allege and prove that such intangible personal property sued upon has been assessed for taxation under the provisions of this act for every tax year during which he was the owner of same, * * *

"If the petition or complaint of the plaintiff fails to make the allegation herein prescribed, either in the original petition or by an amendment to the petition made at any time, or if the plaintiff fails to prove facts supporting such allegations when made, if necessary by reason of being specifically denied under oath, the action must be dismissed upon demurrer or motion of the defendant or by the court on its own motion. Laws 1939, p. 401, § 15; Laws 1961, p. 539, § 1. [Renumbered Laws 1965, c. 215, § 1]."

█ Plaintiff attempts to evade the implications arising from failure to pay the 1962 tax by asserting that this is an unliquidated account sued upon and it took a trial of the issues to determine the exact amount due. However, this court in the case of Marten v. Credit Adjustment Service, Inc., Okl., 378 P.2d 336, has laid down the rule specifically denying the force of such contention, from which we quote as follows:

"In Polk v. Bartlett, Okl., 365 P.2d 987, and in a number of cases cited therein we considered cases similar to this one and held that the intangible tax law applied to the claims or accounts sued on it each of said cases.

"Upon authority of Polk v. Bartlett, supra, and cases therein cited, we find that the account receivable sued on herein was subject to the intangible tax law.

"The defendant herein contends that the account sued on was an unliquidated account and that therefore it was not subject to the intangible tax law, but our holding in the Polk case, supra, and in the numerous cases therein cited, demonstrated that the decision whether an account receivable is liquidated or unliquidated, does not determine the account as being taxable or not taxable as an item of intangible personal property. Certainly liquidated accounts receivable and claims based on personal money judgment, being liquidated, are subject to the intangible tax, while many unliquidated accounts or claims are subject to the intangible tax as demonstrated in the above decisions."

The court in this instance specifically overruled most of the authorities cited by plaintiff.

The ruling in this last mentioned case was later followed in the case of Scott v. Oklahoma Farm Bureau Mut. Ins. Co., Okl., 387 P.2d 487, wherein the court said:

It is urged by defendant, and we think correctly so, that under the provisions of said Section 1515, as interpreted by this court, that in the absence of such allegation and proof the proper order of the court would have been to dismiss the crosspetition on the premium note without prejudice. Craft v. Bates, Okl., 372 P.2d 10."

This view of the Supreme Court is reinforced by the action of the plaintiff in specifically alleging that this account did come under the Intangible Tax Law and by attempting to offer proof of the payment of the 1963 tax, but there was altogether failure to prove payment of the 1962 tax.

Therefore, there was error on the part of the trial court in refusing to sustain the demurrer or dismiss the cause without prejudice unless this tax was paid.

Therefore, upon the authority of the above mentioned cases and the decisions therein recited, the judgment appealed from in this cause is vacated and the cause remanded with directions to the trial court upon proper notice to permit compliance with the Intangible Tax Law and if the same is complied with then to render judg-

ment for plaintiff in the amount of $750.00, otherwise, to dismiss the action of plaintiff without prejudice.

The costs of this appeal are taxed against plaintiff.

This court acknowledges the services of Paul G. Darrough, who with the aid and counsel of V. P. Crowe and Wayne Snow, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the court. The Chief Justice then assigned the case to a Member of the Supreme Court for review and study, after which and upon consideration by the court, the foregoing opinion was adopted.