**TAYLOR et al. v. STARR et al.**

No. 13263—Opinion Filed June 24, 1924.

Rehearing Denied July 29, 1924.

Second Rehearing Denied March 24, 1925.

**1. Appeal and Error—Questions of Fact— Conclusiveness of Verdict.**

Where there is competent evidence introduced at the trial reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling upon law questions presented during the trial, the verdict and finding of the jury is conclusive upon appeal to the Supreme Court.

**2. Same—Sufficiency of Plaintiffs' Evidence.**

Record examined, and held, that the trial court did not err in overruling a demurrer interposed by the defendants to the evidence of the plaintiffs at the conclusion of plaintiffs' case, and in overruling a motion for a directed verdict interposed by the defendants at the conclusion of all the evidence.

**3. Gaming—Wagering Contracts — Burden of Proof.**

The legal presumption is that transactions between parties are not contrary to law, and when the fact does not appear upon the face of the transaction that such transaction is a gambling or wagering contract or against public policy, the burden of proof is upon the party asserting that fact.

**4. Pleading—Sufficiency of Petition on Objection to Introduction of Evidence.**

Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law.

**5. Same—Action by Brokers on Account.**

Petition examined, and held, to state a cause of action, to which it was not error to deny an objection to the introduction of evidence in suppport thereof.

**6. Sufficiency of Instructions.**

Record in the instant case examined, and held, that the instructions given by the court to the jury fairly stated the law applicable to the case and properly defined the issues presented by the pleadings and the evidence in the case.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Wm. B. Starr and Charles Little against Joe Taylor and John Sparks to recover money judgment. Judgment for plaintiffs, and defendants appeal. Affirmed.

Selby & Callihan, for plaintiffs in error.

Embry, Johnson & Tolbert, for defendants in error.

Opinion by FOSTER, C. This action was commenced in the district court of Oklahoma county, Okla., by Wm. B. Starr and Charles Little, defendants in error, plaintiffs below, against Joe Taylor and John Sparks, plaintiffs in error, defendants below, to recover the sum of $1,251.27, alleged to be due them on a verified account. The parties will hereinafter be referred to as they appeared in the trial court.

It was the claim of the plaintiffs that said balance was due them from the defendants on account of certain losses which they had sustained in certain transactions conducted upon the New Orleans Cotton Exchange and the Chicago Board of Trade, wherein they represented the defendants as brokers in the purchase and sale of commodities handled on said exchanges.

It was claimed by the plaintiffs that they were members in good standing of the New Orleans Cotton Exchange, and that on the 31st day of January, 1919, held for the use and benefit of the defendants the sum of $1,257.90 representing a balance due the defendants on certain transactions conducted by them for the defendants on the New Orleans Cotton Exchange, and that on said date, at the request of the defendants, this sum was transferred from New Orleans to Chicago to form the basis of certain transactions which they were to conduct for the defendants on the Chicago Board of Trade through Clement-Curtis Company, brokers and members of the Chicago Board of Trade. That under this arrangement acting through the Clement-Curtis Company, they sold on the 31st day of January, 1919, 10,000 bushels of May corn for $1,193.10 which was filled on February 5, 1919, by the purchase of 10,000 bushels of May corn at $1.16 per bushel, netting a profit to the defendants of $320.10; that on February 10, 1919, they sold 250 barrels of May pork at $38.75 per barrel, and again on February 14th, a like quantity at $40.12 per barrel; that on the 5th day of March, 1919, to protect the defendants as far as possible from loss, occasioned by the advance in the price of pork, on their previous pork transactions, they purchased 250 barrels of July pork at $38.20 per barrel, and again on March 7th, 250 barrels of July pork at $39.05 per barrel, which they sold on March 8, 1919, at a profit of $496, all of

which was done at the special instance and request of the defendants. That on March 13, 1919, the defendants having refused to put up the margins made necessary by the advance in the price of May pork, they purchased 500 barrels of May pork at $46.00 per barrel to fill the contract for May deliveries made on February 10th and February 14th, respectively, whereby they sustained a loss on the pork transaction, including commissions, of $3,325.25, on which the defendants were entitled to a credit of $2,074. representing the balance due them on the New Orleans transaction, plus the profits on the May corn and the July pork, leaving a balance of $1,251.27, all as set forth in an itemized statement of account duly verified and attached to their petition.

The defendants answered: (1) By general denial; and (2) pleaded a counterclaim against the plaintiffs for the aggregate and admitted amounts shown by the verified account as being transferred from New Orleans in the sum of $1,257.90, and the sum of $315.-10, as being realized on the corn deal, or a total of $1,573, and repudiated the pork transactions, alleging that they had had no pork transactions with the plaintiffs whatever.

On the issues thus presented, the cause proceeded to trial before the court and a jury, which resulted in a verdict and judgment in favor of the plaintiffs in the sum of $1,251.27 with interest thereon from March, 1919, at the rate of six per cent. per annum until the date of judgment.

Motion for a new trial was filed and overruled, and the defendants bring the cause regularly on appeal to this court on petition in error and case-made.

At the commencement of the trial, the following stipulation was admitted in evidence:

"It is stipulated and agreed, for the purpose of the trial in the above cause that Clement, Curtis & Co, were in the year 1919, and at the time hereinafter mentioned, brokers in the city of Chicago, Ill., operating on the Board of Trade of Chicago, accepting and executing orders for the purchase and orders for the sale of products including corn, pork, oats, etc.

"That on February 10, 1919, said Clement, Curtis & Co., on telegraphic orders signed 'Starr,' sold 250 barrels May pork, at $38.75 per barrel; that on February 14, 1919, said Clement, Curtis & Co., on like order, sold 250 barrels May pork at $40.12 per barrel, and on March 5, 1919, said Clement, Curtis & Co., on like order from Starr to buy, bought 500 barrels July pork at $38.20 per barrel; that on March 7, 1919, said Clement, Curtis & Co., on like order to buy, bought 250 barrels July pork at $39.05 per barrel; that on March 8, 1919, said Clement, Curtis & Co., on like order to sell, sold 250 barrels July pork at $39.75 per barrel, and 500 barrels July pork at $39.60 per barrel; and on March 13, 1919, said Clement, Curtis & Co., on like order to buy bought 1,500 barrels May pork, at $46.00 per barrel, 500 barrels thereof to be delivered to the purchasers under the said sales contracts of February 10, and February 14, 1919, respectively; that on January 31, 1919, said Clement, Curtis & Co., on like order to sell, sold ten May corn at $1.19-3, and on February 5, 1919, bought the same at $1.16."

The first proposition relied upon by the defendants for a reversal of the case is that the verdict is not sustained by sufficient evidence, and that the trial court erred in not sustaining their demurrer to the evidence of the plaintiffs interposed at the conclusion of plaintiffs' case, and in not sustaining a motion for a directed verdict interposed at the conclusion of all the evidence. A careful review of the evidence convinces us that this proposition is without merit. While the defendants strenuously deny that they had ever had any transactions whatever with the plaintiffs relating to pork in Chicago or elsewhere, this testimony was disputed by the plaintiff Starr, who testified to hearing a conversation over the telephone between one of the defendants and Mr. Crawford, the office manager of the plaintiffs, on March 6, 1919, and subsequent to the time when it is claimed the pork transactions on the 10th and 14th of February took place, in which the defendant Taylor authorized Crawford to buy some July pork in order to hedge against prospective losses on the May pork, and to draw a draft on him for $750 to cover margins called for by the Chicago office on account of the advance in the price of May pork over the price at which it was sold in the transactions had in February.

This testimony is substantially corroborated by the witness Crawford himself, who testified that he purchased, upon request of the defendants, July pork to hedge against the danger of loss on the February contracts, which he sold the next day for a small profit.

There was other evidence introduced by the plaintiffs tending to show that several conversations had occurred between defendant Taylor and one E. D. Roach after the alleged pork deals in February had been consummated, in which the defendant sought from the plaintiff information regarding the pork market and the pork situation generally. It was the plaintiffs' theory, based on this and other evidence, that the defendants authorized the pork deals and sought to repudiate them only when it became apparent

on about March 10th that margins would be necessary in order to protect their contracts for deliveries of May pork against an unexpected advance in the market, and by reason of such repudiation it became necessary for the plaintiffs to close out the pork deals entirely, based on market quotations on March 13th, whereby they sustained a loss, including commissions, of $3,325.25.

It is sufficient to say that these questions of fact were matters for the jury to determine under the conflicting evidence before it, and where there is competent evidence introduced reasonably tending to support the verdict of the jury, such verdict and finding is conclusive on appeal to this court.

It is argued by the defendants, however, that inasmuch as no evidence was introduced by the plaintiffs to show that the pork transaction in controversy came within the satisfying provisions of sections 2 and 4, ch. 97 of the Session Laws of 1917, the transaction must be held to be a gambling transaction, against public policy and void.

There was no evidence introduced at the trial tending to show how or in what manner the contracts relating to May pork were executed in Chicago, other than the stipulation hereinbefore set out. Neither in the answer filed by the defendants, nor in any evidence introduced by them at the trial, was anything pleaded or offered which tended in any way to impeach the pork transactions in controversy as gambling or bucket shop transactions.

The record clearly shows, we think, that the stipulation introduced in evidence was relied upon by both sides as supplying all of the necessary proof in respect of the execution in Chicago of the pork contract, and that the case was tried and submitted to the jury solely upon the proposition as to whether or not the defendants had authorized plaintiffs to engage in these transactions.

The record further shows that if the proof introduced is silent in respect of the manner of the execution of these contracts, and as to whether or not they were made in accordance with the rules and regulations of the Chicago Board of Trade by members in good standing of said Board of Trade, and actually executed on the floor of such Board of Trade, this error, if such it was, was invited and acquiesced in by the defendants at the trial.

It is true the stipulation was objected to when offered in evidence by the plaintiffs, but the objection was made upon the ground that evidence of the transactions in Chicago was incompetent until it had first been shown that the defendants had authorized these transactions, and it was admitted at the commencement of the evidence upon statement of counsel for plaintiffs that he would later make the same competent by showing authorization by the defendants of these contracts, and the record shows, we think, as already pointed out, that the plaintiffs met these requirements in such a way as to make the stipulation competent. Offers of proof subsequently made by the plaintiffs of the details of the transactions in Chicago were met with the objection by the defendants that the stipulation introduced in evidence fully covered these matters, showing, we think, that the only issue of fact submitted to the jury was the simple question of whether or not the defendants had authorized the transactions in controversy.

In this state of the record, we think chapter 97, Session Laws of 1917, has no application to the facts in the instant case. Furthermore, the evidence discloses that the Chicago brokers, Clements-Curtis Company, were members of the Chicago Board of Trade, and in the absence of anything in the pleadings or the evidence introduced to the contrary, we think the presumption would obtain that the contracts were executed within the satisfying provisions of sections 2 and 4, ch. 97, Session Laws of 1917. This act legalizes dealings for the future delivery of commodities, defines the essentials of legality, in consequence of which we think the presumption of legality obtained, putting on the party assailing the legality of such transaction the burden of showing failure of compliance with the act.

In Young v. Stephenson et al., 82 Okla. 239, 200 Pac. 225, it is held:

"The legal presumption is that transactions between parties are not contrary to law, and when the fact does not appear upon the face of the transaction that such transaction is a gambling or wagering contract or against public policy, the burden of proof is upon the party asserting that fact."

In Jennings v. Morris et al. (Pa.) 61 Atl. 115, it is said:

"The legal presumption is that the transactions were not contrary to law. Citing Bibb v. Allen, 149 U. S. 481, 37 L. Ed. 819, and Clews v. Jamieson, 182 U. S. 461, 45 L. Ed. 1183."

In Gettys v. Newbarger, 272 Fed. 209, it was held:

"As a general rule, contracts for the purchase or sale of cotton, grain, or other personal property on the great public exchanges

of the country, to be delivered in the future in accordance with the by-laws, rules, and settled usages of such exchanges, or in private between man and man, are lawful and valid, and the burden is on one who assails them to establish their invalidity, by proof sufficient to overcome the legal presumption of validity."

When the defendants in the instant case stipulated that Clements-Curtis Company effected the controverted transactions in Chicago, the law presumed that they were legally effected and that everything was done that was necessary to make them legal under the law in the absence of anything in the pleadings or the proof to the contrary.

The defendants in their pleading insist upon a recovery for the profits on the corn transaction in Chicago, shown to have been handled by Clements-Curtis Company as arising out of a contract with plaintiffs, and we think that any controversy as to the validity of the Chicago transactions was thereby eliminated, leaving for determination only the issue as to whether or not the contract was sufficiently comprehensive to include the pork transaction.

It is next insisted that instructions Nos. 4, 5, and 6 were fundamentally wrong in that they failed to take into consideration the act of 1917, and in assuming that the only issue in the case was whether or not the defendants had authorized the plaintiffs to make the purchases and sales of pork for and on behalf of the defendants.

We have already found that the 1917 act was inapplicable to the circumstances as disclosed by the record in the instant case, and it is obvious, therefore, that the court's instructions were applicable to the issues submitted to the jury on which the case was tried.

Defendants' counterclaim, claiming the benefit of certain corn contracts in Chicago, and their conduct in insisting upon the stipulation as furnishing the sole evidence of the manner in which the contracts were executed in Chicago, foreclosed every issue, except that of the authority of plaintiffs to represent the defendants in the pork transaction, and the only controversy was whether or not the contract under which profits were earned for the defendants on the corn transactions extended and included the pork transactions.

In these circumstances, we think the court properly told the jury that the only issue of fact was whether the defendants had authorized the plaintiffs to represent them in the pork transaction, and in respect to that issue the burden was on the plaintiffs to show by a preponderance of the evidence that the defendants had authorized such transactions, as a result of which certain losses had been sustained.

The next claim is that the plaintiffs' petition failed to state facts sufficient to constitute a cause of action, and that therefore the objection at the beginning of the trial to the offer of any evidence on behalf of the plaintiffs should have been sustained.

The record shows that the petition was not demurred to. Nor did counsel inform the court, when the objection was made, of nature of his objection. In these circumstances, such objections are not favored and should not be sustained unless there is a total failure to allege some matter essential to the relief sought, and should seldom be sustained when the allegations are simply incomplete, indefinite, or conclusions of law. Carr v. Seigler, 52 Okla. 485, 153 Pac. 141; Johnston et al. v. Chapman et al., 38 Okla. 42, 131 Pac. 1076; Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 48 Okla. 745, 150 Pac. 712.

However, in the instant case it is alleged that plaintiffs performed certain acts resulting in loss at the instance and request of the defendants.

In 15 A. & E. Ency. Law (2nd Ed.) 1099, it is said:

"If a person pays money at the request of another, or assumes an obligation for him under which he is eventually compelled to pay money, the law implies a promise on the part of the party making the request to reimburse the party paying the money, and it may be recovered back in assumpsit."

The petition was based upon an account for particular quantities of goods, wares, and merchandise bought and sold, as shown by a verified statement attached, at the special instance and request of the defendant, and under the rule laid down in Mooney et al. v. First State Bank of Washington, Okla., 48 Okla. 676, 149 Pac. 1173, the account constituted the basis of the action. We are unable to see wherein the petition is not good against a general demurrer.

The rule is well settled that an agent in a transaction for an undisclosed principal may recover from his principal an amount sufficient to reimburse him for expenditure, loss, or damage sustained by him on account of his undisclosed principal. 2 C. J. p. 793.

The objection that the allegations in the petition do not bring it within the provisions of chapter 97, Session Laws of 1917, has already been considered adversely to the contention of the defendants.

Defendants next rely upon the statute of frauds, claiming that plaintiffs' rights in the premises depend upon a contract not enforceable under the statute of frauds.

As before stated, the manner of the execution of the pork contracts in Chicago has been foreclosed by the stipulations and conduct of the defendants at the trial, and the statute of frauds, affecting only the execution of the contracts in Chicago, cannot now be considered in this court. If execution of the pork contracts was invalid as being within the statute of frauds, so were the corn contracts, and defendants could not, therefore, urge the invalidity of the pork contracts on this ground without making invalid the profits from the corn transactions, for which they claim a right to recover in their counterclaim.

The objection that plaintiffs' exhibits 11, 12, and 13, being copies of the telegrams sent by the plaintiffs to the Clements-Curtis Company and by them to the defendants, were improperly admitted in evidence, is, we think, untenable. These telegrams related to transactions admitted by the stipulation entered into by the parties, tending merely to show the manner of effecting certain transactions that the stipulation showed had been effected, and therefore could not have prejudicially affected the rights of the defendants, even if it should have been error to admit them.

Our conclusion, based upon a careful examination of the entire record, is that the case was properly submitted to the jury under instructions properly defining the issues presented under the pleadings and evidence in the case, and that no prejudicial errors sufficient to justify a reversal were committed.

For the reasons stated, it is our opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.