## AVERY, Adm'x, v. GOODRICH et al.

No. 19132.   Opinion Filed Sept. 17, 1929.

Saunders & Emerick, for plaintiff in error.

Phillips & Duling, for defendants in error.

FOSTER, C. C. F. Avery commenced this action in the district court of Okfuskee county against J. H. Goodrich et al., the defendants above named, doing business under the firm name and style of the Weleetka Gin Company, in which he sought judgment in the sum of $9,692.92. A demurrer to the petition was sustained by the district court and the cause appealed to this court and reversed, the same being Avery v. Goodrich, 103 Okla. 156, 229 Pac. 577, in which case will be found a statement of the allegations of the petition. In that appeal it was held that the petition stated a good cause of action, and the cause was remanded for further proceedings.

Thereupon the defendants filed an answer which, in addition to a general denial, specifically denied the existence of the partnership for the purpose of dealing in cotton futures, and specifically denied that the defendants were indebted to the plaintiff in any sum. The answer further specifically denied that J. H. Goodrich, either for himself or on behalf of the other defendants, ever authorized the execution of the contract sued upon, denied the legality of said contracts, and pleaded that the same were executed by the plaintiff, C. F. Avery, without any authority on behalf of the defendants, and especially without any authority on behalf of the partnership, Weleetka Gin Company.

At a trial before a jury, the testimony disclosed that persons named as defendants in this action, who are alleged to be doing business under the firm name and style of Weleetka Cotton Gin Company, together with one or two other persons, were engaged in a partnership known by that name in the year 1921. It appears, however, that the partnership was for the sole purpose of conducting a cotton gin in Weleetka and buying and selling cotton upon the streets in that city; that its activities in buying and selling cotton were restricted to what is known as spot cotton or street cotton, which are terms to designate the purchase of cotton upon a local market, or upon the streets of the city, and not otherwise; that J. H. Goodrich was the manager of said company.

It appears that J. H. Goodrich, prior to the time of the transaction sued upon, had been buying cotton on the board of trade through the New Orleans Cotton Exchange in his own name, and had considerable account with them; that along in the first of September, 1921, several members of the firm, and perhaps one or two other members not interested in the Weleetka Cotton Gin Company, made up what was designated a "pot," each donating a certain amount of money, and delivered the same to Goodrich for the purpose of buying futures on the New Orleans Cotton Exchange; that thereupon Goodrich took this money and came to Oklahoma City, and had his account with the New Orleans Cotton Exchange changed from his individual name to the Weleetka Gin Company, and deposited therein the money received from the others, and thereafter bought futures in cotton on said exchange through C. F. Avery, as a broker in Oklahoma City and member of the said exchange, in the name of the Weleetka Cotton Gin Company; Goodrich himself testifying that he only used the name of the Weleetka Cotton Gin Company as a matter of convenience, and that he was not authorized by that company to buy futures in cotton; that he was only acting for himself and those men who had donated to the "pot," some of whom were members of the Weleetka Cotton Gin Company, and some were not,

The testimony is to the effect that J. H. Goodrich authorized C. F. Avery to enter into certain contracts for future delivery of cotton, and on account of a decline in price and failure to place money to cover the margin, Avery suffered a loss in the amount sued for in his petition. The testimony shows that Avery was acting as agent for Goodrich or the Weleetka Cotton Gin Company and had no personal interest in the purchases except a commission. In our view of the case, it may be assumed, without deciding, that Goodrich and those for whom

he was acting were liable for the amount sued for, although Goodrich himself testified that he understood he was not to become liable for any more than what he had deposited with Avery at the time the purchases were made.

However, Goodrich admits that he authorized the sending of the telegrams on which the contracts are based, and that the cotton was purchased pursuant to his request, although he attempts to show that C. F. Avery was negligent in disposing of his contract.

The jury returned a verdict in favor of C. F. Avery for the full amount. The defendants thereupon filed a motion for a new trial, which motion for a new trial was sustained by the court and a new trial granted, from which judgment this appeal is prosecuted.

After judgment in the trial court, C. F. Avery died, and the cause was revived in the name of Ida W. Avery, as administratrix of his estate.

The only proposition presented by this appeal is whether or not the trial court erred in sustaining the motion for a new trial.

The plaintiff argues that, under the record in this case, there was sufficient evidence to justify the submitting of the same to the jury, and the jury having found in favor of the plaintiff, there is nothing for the court to pass upon, it being plaintiff's contention that, under the decisions of this court and the Supreme Court of the United States and the federal court, the contracts entered into between Avery and the defendants through J. H. Goodrich were legal and binding contracts, and that the defendants were bound thereby, and there was nothing on which to base a new trial. In support of this contention, plaintiff relies upon the following cases: Thorn v. Browne, 257 Fed. 519; Gettys v. Newburger, 272 Fed. 209; Clews v. Jameson, 182 U. S. 461, 45 L. Ed. 1183; Wilhite v. Houston, 200 Fed. 390; Board of Trade v. Christie Gr. Co., 198 U. S. 249, 49 L. Ed. 1031, and several other cases from the United States District Court, Circuit Court of appeals, and Supreme Court. Also, the case of Avery v. Goodrich, supra (first appeal herein), and Taylor v. Starr, 109 Okla. 135, 234 Pac. 756.

We have carefully examined each of these cases, and find that contracts similar to the one relied upon in the instant case were upheld, and we agree with the contention of the plaintiff that the contract in the instant case, if entered into as sworn to by the plaintiff, was perhaps binding upon J. H. Goodrich and those whom he represented.

But even assuming that the contract was legal and binding, we are still confronted with the proposition as to whether or not the court abused its discretion in granting to the defendants a new trial.

It is admitted that, in the granting or overruling of a motion for a new trial, the trial court has a broad discretion, and that such orders will not be interfered with on appeal unless it clearly appears that the trial court has abused its discretion. It has also been held that, where a motion for a new trial is granted, the showing for reversal should be much stronger than where a new trial is denied. McGhee v. Hurst, 91 Okla. 258, 217 Pac. 368; Burtschi v. Love, 105 Okla. 97, 231 Pac. 1048.

However, where it clearly appears that the court was misled on some clear, pure, and unmixed question of law, and that his ruling thereon was erroneous, the same will be reversed on appeal. The discretion of the court in granting or refusing a new trial should be a legal and not an arbitrary discretion. And when it appears from the record that there was not sufficient ground for a new trial alleged by the complaining party, and none otherwise shown, this court will presume that none exists, and that the trial court abused its discretion in making the order and will reverse the same. Poynter v. Beacon Falls Rubber Co., 115 Okla. 245, 242 Pac. 563.

Assuming, without deciding, that the court abused its discretion in granting a new trial upon the proposition presented by the plaintiff, we now pass to the contention of the defendants.

The defendants contend that the principal question presented by this appeal is whether or not the plaintiff established the fact, to the full requirement of the law, that J. H. Goodrich was the duly authorized agent of the copartnership known as the Weleetka Cotton Gin Company in the transactions had on the board of trade. This is the sole contention of the defendants, and the plaintiff does not discuss this proposition. The case is briefed upon two entirely different theories; the plaintiff assuming that J. H. Goodrich by the testimony and evidence had power to represent, and did represent, the Weleetka Cotton Gin Company, but no argument nor authorities are presented in support thereof.

As above indicated, Goodrich himself, as well as every member of the Weleetka Cotton Gin Company, denied that he had any authority to represent that company on the board of trade. However, he did instruct the plaintiff to change his personal account

to the name of the Weleetka Cotton Gin Company, and thereafter transacted his business in the name of that company. As testified by him, however, this was for convenience to him, and not for the purpose of binding the copartnership. The evidence is undisputed that at least one, and perhaps more, of the defendants sued here were in no way interested in the business of buying and selling on the board of trade.

M. S. Douglas, one of the defendants, testified that he refused to have anything to do with J. H. Goodrich's transactions on the board of trade. He refused to donate to the pot which was deposited with the New Orleans Cotton Exchange. This testimony is undisputed. There are, perhaps, other defendants who had no interest in the money which Goodrich used to buy futures in cotton. The judgment was against the copartnership, and when the assets of that company were exhausted it would run against M. S. Douglas, personally. Under this state of the record, it is at least very doubtful whether or not substantial justice was done by granting a judgment against Douglas.

It does not appear from the record, and we are not advised, upon what grounds set up in the motion for a new trial the court predicated its judgment sustaining said motion. The judgment of the court is a general finding that a motion for a new trial should be sustained. Under the circumstances in this case, after a very thorough examination of the trial record, we believe the holding of this court in the cases of Baker & Strawn v. Magnolia Petr. Co., 124 Okla. 94, 254 Pac. 26, and Isaacs v. Tull, 131 Okla. 138, 267 Pac. 1049, and other cases is applicable to the facts in the case at bar; the holding being, in substance, as follows: The judge who presides at the trial of a case, hears the testimony of the witnesses, observes their demeanor, and has a full knowledge of the proceedings had and done during the process of the trial, is in a better position to know whether or not substantial justice has been done than any other person. Where such judge sustains a motion for a new trial, it will require a clear showing of manifest error and an abuse of discretion before the appellate court will be justified in reversing such ruling of the trial court.

From an examination of the entire record, we cannot say that the trial court abused its discretion in sustaining defendants' motion for a new trial, and for that reason the judgment of the trial court is sustained.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.