## MANNING v. GORTON et al.

No. 22084.   March 27, 1934.

Mills & Cohen and Loyal J. Miller, for plaintiff in error.

Ed L. Jones, for defendants in error.

WELCH, J.   This is an appeal from the district court of Tulsa county, Okla. The trial court sustained an objection to the introduction of evidence upon the ground that the petition did not state a cause of action, and rendered judgment in favor of defendants. T. Manning was plaintiff and Leo H. Gorton and L. L. Dresser were defendants. The parties occupy in this court the same relative position as they appeared in the trial court, and will hereinafter be referred to as plaintiff and defendants.

The only question presented on appeal is whether or not plaintiff's petition states a cause of action against the defendants.

The defendants had filed an answer, and a jury had been impaneled and sworn to try the cause, and counsel for plaintiff and defendants had completed their opening statements to the jury.

The petition as filed, omitting the intro-ductory formalities and the prayer, is as follows:

"For his cause of action plaintiff shows that he was prior to the 30th day of April, 1929, the inventor of a certain system of portable house construction, on which said plaintiff had an application for patent pending before the patent office of the United States of America under serial No. 260537, and the defendants were engaged in the business of the manufacture and sale of oil field supplies and specialties.

"That on the said 30th day of April, 1929, plaintiff and defendants entered into a written contract for the construction, sale, and distribution of portable houses of plaintiff's design, under a license from plaintiff upon the application for patent hereinbefore mentioned. A copy of which contract is hereto attached, marked 'Exhibit A' and made a part hereof.

"That by the terms of said contract it was agreed that defendants Leo H. Gorton and L. L. Dresser should organize a corporation under the laws of the state of Oklahoma, with a paid-up capital stock of twenty-five thousand ($25,000) dollars, to be known as the Oil States Manufacturing Company, and that the said plaintiff should grant to the said corporation so organized a license under his application for patent for the manufacture, sale, distribution, and erection of portable houses of the general design described in the patent above mentioned.

"That under said contract it was further agreed by the said defendants that they should cause to be issued to this plaintiff by the said corporation to be organized by them under said contract thirty (30) per cent. of the capital stock of said corporation.

"Plaintiff further states that the said defendants did organize the said corporation under the name of the Oil States Manufacturing Company, of which this plaintiff and these defendants were the sole stockholders and the defendant Leo H. Gorton became president of the said corporation and the defendant L. L. Dresser became secretary thereof, and that this plaintiff was elected vice president; that thereafter, on the 27th day of May, 1929, in pursuance of the contract above mentioned between the plaintiff and the defendants, this plaintiff did execute and deliver to the Oil States Manufacturing Company a license to do the things for which the said corporation was organized.

"Plaintiff further states that the said defendants above named wholly failed and refused to comply with said contract by organizing a corporation of twenty-five thousand ($25,000) dollars capital stock, but did in fact organize a corporation of what was purported to be thirteen thousand ($13,000) dollars paid-up capital stock, but that in truth and in fact only a small part of said thirteen thousand ($13,000) dollars was ac-

tually paid into said corporation in money or property of the same cash value. That three thousand ($3,000) dollars of said capital stock was reported to be the value of plaintiff's license and the balance of ten thousand ($10,000) dollars, which purported to be contributed by said defendants, only a small part was actually paid into said corporation.

"Plaintiff further states that after the organization of said corporation as aforesaid, these defendants in violation of that agreement with this plaintiff caused to be issued to the corporation known as Dresser and Gorton, Inc., ninety-eight (98) shares of said stock, of the par value of one thousand ($1,000) dollars, and to the defendants Leo H. Gorton and L. L. Dresser, one (1) share each of said stock. That the said defendants, through their ownership of the stock of Dresser and Gorton, Inc., controlled said corporation, and although this plaintiff made frequent demands therefor, the said defendants failed and refused to issue to this plaintiff his thirty (30) per cent. of the stock of said Oil States Manufacturing Company.

"Plaintiff further states that said contract was to become null and void if the business of said corporation at any time in the sale and distribution of the portable houses aforementioned should become unprofitable; and that the said defendants claimed that said business was unprofitable, notified this plaintiff that they elected to discontinue the sale and distribution of said portable houses, and tendered back to this plaintiff all the rights said corporation had under the license granted it by plaintiff as aforesaid, and refused to recognize that this plaintiff had any stock in said corporation, or any rights by virtue of said stock ownership, in the assets of said corporation.

"Plaintiff further states that under said contract these defendants obligated themselves to organize a corporation, and to cause to be paid into said corporation the sum of twenty-five thousand ($25,000) dollars in money, or its equivalent in property or other physical assets, and that if the said defendants had done as they agreed to do the stock of said corporation would have been worth its par value; and it was further the duty of said defendants under said agreement to deliver to this plaintiff in consideration of the license granted to said corporation thirty (30) per cent. of the stock of said corporation, and to have said stock transferred upon the books of said corporation to this plaintiff under the laws of the state of Oklahoma; that had said defendants carried out and performed the terms of their contract this plaintiff would have received stock in said corporation of the value of seventy-five hundred ($7,500) dollars, and that by reason of the failure of said defendants to carry out the terms of said contract he has been damaged in the

said sum of seventy-five hundred ($7,500) dollars."

To this petition was attached a copy of the contract referred to therein, which in some respects, at least, is in conformity with the allegations of the petition concerning the agreement.

The defendants' answer as filed contains, first, a general denial, and, in addition thereto, the following:

"These defendants admit that on the 30th day of April, 1929, the plaintiff and defendants entered into a written contract, a copy of which contract is attached as exhibit 'A' to the plaintiff's petition.

"Further answering said petition and as a first affirmative defense thereto, these defendants allege that under the contract mentioned and described in the plaintiff's petition and attached to the plaintiff's petition, the plaintiff represented that he was the inventor of a new, useful and valuable invention, to wit, a system of portable house construction, upon which a patent application was pending, and represented that a patent upon such new, useful and valuable invention would be issued to him, but these defendants allege that the plaintiff was not the inventor of a new, useful and valuable patent, and affirmatively allege that the application of the plaintiff for a patent upon his system of portable house construction was by the United States Commissioner of Patents rejected and no patent was ever issued to the plaintiff, and these defendants therefore allege that the license to exploit and use the said purported patent was of no value and that there was a total failure of consideration for the said contract.

"Further answering said petition and as a second affirmative defense thereto, these defendants allege that the execution of the contract mentioned and described in plaintiff's petition was made upon the representation of the plaintiff that he was the owner of a new, useful and valuable invention, to wit, the system of portable house construction, and that a patent would be issued to him, and that upon the issuance of such patent that he would grant a license to the defendants to use and exploit the said invention, but these defendants allege that the plaintiff was not the inventor of a new and useful invention, that no patent was ever issued to the said plaintiff, and that the application for patent by the plaintiff was by the United States Commissioner of Patents rejected; that the plaintiff was mistaken as to the value of his invention or its patentability, and these defendants therefore allege that the said contract entered into between the plaintiff and defendants was based entirely upon a mutual mistake of fact, to wit, the fact that the plaintiff was the owner of a useful invention or that a patent will issue to him, and these defendants al-

lege that by virtue of the fact that no patent could be issued to the plaintiff, and that therefore the plaintiff could not grant these defendants a license to use said patent, the contract is of no force and effect and no rights of any kind or nature accrued to the plaintiff thereunder.

"Further answering said petition and as a third affirmative defense thereto, these defendants allege that the contract provided as follows: 'It is further mutually agreed by and between the parties hereto that this agreement shall be binding on said respective parties so long only, as the manufacture, sale and distribution of the portable houses are profitable to the corporation hereinabove referred to, and that at any time the business of said corporation, as respects the manufacture, sale, and distribution of the portable houses, shall show that it is not profitable, that this contract shall automatically become null and void, and the license of the second party to the corporation shall be canceled and revert back to the said second party, his heirs or assigns.'

"And these defendants therefore allege that by virtue of the fact that the plaintiff was not the owner of a new, useful, and valuable invention, as hereinabove set forth, and by virtue of the fact that no patent was ever issued to the plaintiff, and by virtue of the further fact that the plaintiff could not grant these defendants a license, no sale or exploitation of the invention was had under the said agreement and the corporation realized no profits of any kind and could not realize any profits, and no manufacture, sale, or distribution of the portable houses was or could be had by the corporation, and that therefore, no profits of any kind were realized and the business was unprofitable, and therefore, the contract, by its own terms, automatically became null and void and the plaintiff acquired no rights of any kind or nature thereunder."

The plaintiff filed a reply in the form of a general denial.

In Taylor v. Starr, 109 Okla. 135, 234 P. 756, this court announced the following rule applicable to an objection to the introduction of evidence on the grounds that the petition does not state a cause of action:

"Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law."

For the purpose of this consideration, we must take as true all of the allegations contained in the petition. The petition in the instant case and the contract, copy of which is attached thereto, will be considered together as one instrument. The petition alleges that the defendants agreed to organize a corporation; that upon the organization of the corporation the defendants would cause certain stock to be issued to the plaintiff under certain conditions. The contract contained the following provision:

"It is further agreed that the first parties shall cause to be issued to the second party thirty per cent. (30%) of any and all stock of the corporation which may be issued, as and when the same is issued, up to and including the original capitalization of said corporation, as stated in the fourth paragraph hereof."

The petition alleges that a corporation was organized and certain stock was issued and that the defendants in violation of the agreement failed and refused to issue thirty (30%) per cent. of the stock to the plaintiff, although plaintiff had demanded that they do so; that he had performed his part of the contract by assigning his rights, under the patent application, to the corporation. The pertinent parts of the petition which, in our view, are sufficient to state a cause of action for breach of contract, are found in the following paragraphs of the petition:

"That under said contract it was further agreed by the said defendants that they should cause to be issued to this plaintiff by said corporation to be organized by them under said contract thirty (30) per cent. of the capital stock of said corporation.

"Plaintiff further states that the said defendants did organize the said corporation under the name of the Oil States Manufacturing Company, of which this plaintiff and these defendants were the sole stockholders, and the defendant Leo H. Gorton became president of the said corporation, and the defendant L. L. Dresser became secretary thereof, and that this plaintiff was elected vice president; that thereafter, on the 27th day of May, 1929, in pursuance of the contract above mentioned between the plaintiff and the defendants, this plaintiff did execute and deliver to the Oil States Manufacturing Company a license to do the things for which the said corporation was organized.

"Plaintiff further states that after the organization of said corporation as aforesaid, these defendants in violation of that agreement with this plaintiff caused to be issued to the corporation known as Dresser and Gorton, Inc., ninety-eight (98) shares of said stock, of the par value of one thousand ($1,000) dollars, and to the defendants Leo H. Gorton and L. L. Dresser, one (1) share each of said stock. That the said defendants, through their ownership of the stock of Dresser and Gorton, Inc., controlled said

558

corporation, and although this plaintiff made frequent demands therefor, the said defendants failed and refused to issue to this plaintiff his thirty (30) per cent. of the stock of said Oil States Manufacturing Company."

Defendants contend that under the terms of the contract the parties thereto were at liberty to consider the same void at any time the operation of the enterprise failed to be a profitable undertaking. This is of no consequence for the purpose of determining the question now before us, for the reason that the petition states a breach of the terms of the contract, and plaintiff, under his allegations, would have been entitled to have issued to him some stock in the corporation, even though the business might subsequently prove unprofitable. The provisions of the contract relative to the action which might be taken by the parties in the event the business proved unprofitable did not render the contract void within the contemplation and meaning expressed in McLain v. Oklahoma Cotton Growers Ass'n, 125 Okla. 264, 258 P. 269, which is cited by the defendants.

We do not mean to say that the petition is or is not sufficient to support the entire theory of the plaintiff's case as outlined in his brief, but merely that the petition does state a contractual obligation on the part of the defendants to issue stock to plaintiff, and alleges a breach of that contract by the defendants, which, under the rule in Taylor et al. v. Starr et al., supra, is sufficient as against an objection to the introduction of evidence on the grounds stated.

A proper trial of the cause in the trial court will determine what amount, if any, the plaintiff is in fact and in law entitled to recover. The determination of the cause against plaintiff on the objection to the introduction of his evidence cannot be sustained.

The judgment is therefore reversed and remanded to the trial court, with directions to proceed consistent with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and BAYLESS, JJ., concur.